**In re Titus C. OPARAJI, Debtor.**

**Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Home Mortgage, Inc., as Servicing Agent for Deutsche Bank National Trust, Appellant,**

**v.**

**Titus C. Oparaji, Appellee.**

**Bankruptcy No. 10–30968–H4–13.
Adversary No. H–10–3231.
Civil Action No. H–11–0129.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 29, 2011.

Order Denying Reconsideration
Nov. 3, 2011.

William David Weber, Weber Law Firm, Houston, TX, for Plaintiff.

George A. Kurisky, Jr., Johnson DeLuca Kurisky & Gould, P.C., Mitchell J. Buchman, Barrett Daffin Frappier Turner & Engel, Houston, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

SIM LAKE, District Judge.

Appellant, Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Home Mortgage, Inc., as servicing agent for Deutsche Bank National Trust, appeals the Bankruptcy Court's Amended Order of

January 14, 2011, granting the motion of Titus C. Oparaji for summary judgment.[1] Pending before the court are the Brief of Appellant (Docket Entry No. 11), Appellee's Brief (Docket Entry No. 12), and Reply Brief of Appellant (Docket Entry No. 14). For the reasons explained below the Bankruptcy Court's Amended Order of January 14, 2011 (Docket Entry No. 47 in Adversary No. 10–3231), will be affirmed.

## I. *Factual Background*

On July 31, 2002, Titus C. Oparaji executed a Balloon Note and Deed of Trust in favor of Wells Fargo Home Mortgage, Inc. for the purchase of a home located in Sugar Land, Texas (the Property).[2] The Balloon Note had a principal balance of $180,850.00, and it accrued interest at an annual rate of 9.50%.[3]

On September 2, 2004, Oparaji filed for relief under Chapter 13 of the Bankruptcy Code in Cause Number 04–42461–H1–13 (First Bankruptcy).[4] Under the proposed plan Oparaji was to pay certain amounts to the Trustee who would apply a portion of these amounts to Oparaji's pre-petition arrearage to Wells Fargo, and Oparaji would make on-going, post-petition mortgage payments directly to Wells Fargo.[5] On December 29, 2004, the Bankruptcy Court confirmed Oparaji's Plan.[6]

On March 3, 2005, Wells Fargo filed a motion for relief from automatic stay so that it could proceed with foreclosure as provided in the Deed of Trust because Oparaji had failed to make post-petition mortgage payments to Wells Fargo.[7] Wells Fargo expressly alleged that

> Debtor and Co–Debtor have failed to maintain current the post-petition payments due under the note and are presently in arrears for 4 payments through and including the March 1, 2005 payment.
>
> Debtor and Co–Debtor have failed to make payments of principal or interest to Movant. Movant reserves the right to further assert that Debtor and Co–Debtor have failed to pay taxes or insurance on the property.[8]

On May 13, 2005, the Bankruptcy Court entered an Agreed Order Conditioning Automatic Stay, which provided in pertinent part as follows:

> Debtor shall modify the Chapter 13 Plan on or before May 29, 2005 to include all post-petition arrearages and attorney's fees and costs in the total amount of $2,599.81 to be paid by the Chapter 13 Trustee through the Debtor's Amended Chapter 13 Plan. Said total amount consists of post-petition payments for the month of April 1, 2005 and additional fees and costs . . . . [9]

On May 20, 2005, Oparaji filed a Motion to Modify Confirmed Plan with Plan Modification and Notice of Hearing and Time to Object in which he proposed adding the

---

1. Bankruptcy Record on Appeal, Docket Entry No. 9 (BROA), # 150.

2. BROA # 136, Defendant Wells Fargo Bank, N.A.'s Motion for Partial Summary Judgment and Brief in Support, pp. 30–33.

3. *Id.* at 30.

4. BROA # 1, Docket Sheet for Bankruptcy Petition # 04–42461, p. 3.

5. BROA # 15, Chapter 13 Plan, pp. 1–2.

6. BROA # 18, Order Confirming Chapter 13 Plan.

7. BROA # 23, Motion of Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Home Mortgage, Inc., for Relief from Stay and Waiver of Thirty Day Requirement, pp. 1–4.

8. *Id.* at 3 ¶¶ 5–6.

9. BROA # 28, Agreed Order Conditioning Automatic Stay, p. 2 ¶ 3.

$2,599.81 post-petition mortgage arrearage pursuant to the Agreed Order.[10] Wells Fargo filed an amended proof of claim, which included an escrow shortage of $6,225.10, post-petition arrearage in the amount of $2,599.81, and a total arrearage claim of $15,209.17.[11] On July 13, 2005, the Bankruptcy Court approved Oparaji's Modified Chapter 13 Plan.[12]

On May 23, 2007, Oparaji filed another motion to modify his plan that sought to have ongoing, post-petition mortgage payments paid through the plan, and acknowledged that Oparaji owed post-petition taxes for 2006 to Fort Bend County.[13] On May 24, 2007, the Bankruptcy Court approved Oparaji's Second Modified Plan.[14]

On December 23, 2008, Wells Fargo filed an amended proof of claim that included an escrow shortage of $964.60, post-petition arrearage of $2,599.81, delinquent 2006 taxes in the amount of $7,399.02 that Wells Fargo advanced on Oparaji's behalf, and a total arrearage claim of $17,347.69.[15]

On April 14, 2009, Oparaji filed a Third Motion to Modify Confirmed Plan for the purpose of curing post-petition payment defaults.[16] On May 25, 2009, the Bankruptcy Court entered an Order Confirming Chapter 13 Plan Modification and Valuing Collateral Pursuant to 11 U.S.C. § 506.[17]

On July 1, 2009, Wells Fargo filed another amended Proof of Claim that included an escrow shortage of $964.60, a post-petition arrearage of $2,599.81, delinquent 2006 taxes in the amount of $7,399.02, and a total arrearage claim of $18,944.40.[18]

On September 18, 2009, Wells Fargo issued a "Notice of Termination of Automatic Stay Due to Failure to Cure Default," alleging that the automatic stay had terminated.[19]

On October 5, 2009, the Trustee filed a motion to dismiss because Oparaji was in default of $7,908.18 in plan payments, and the case had exceeded the statutory time limitation set by 11 U.S.C. § 1322(d).[20] On November 11, 2009, the Bankruptcy Court entered an order dismissing Oparaji's First Bankruptcy.[21] Oparaji did not receive a discharge in the First Bankruptcy.[22]

On February 1, 2010, Oparaji initiated a Second Bankruptcy, case number 10–30968–H1–13.[23] On March 2, 2010, Wells Fargo filed a Proof of Claim,[24] and on March 11, 2010, Wells Fargo filed an

**10.** BROA # 29, Motion to Modify, p. 2.

**11.** BROA # 30, Proof of Claim, p. 2.

**12.** BROA # 39, Order Approving Modification of Chapter 13 Plan.

**13.** BROA # 67, Debtor's Amended Motion to Modify Confirmed Plan, pp. 1, 7, and 9.

**14.** BROA # 69, Order Confirming Chapter 13 Plan and Valuing Collateral Pursuant to 11 U.S.C. § 506.

**15.** BROA # 79, Proof of Claim, p. 2. The Bankruptcy Court referred to this Proof of Claim as the "Earlier Proof of Claim." *See* BROA # 150, Memorandum Opinion, p. 2.

**16.** BROA # 85, p. 1. *See also* Appellee's Brief, Docket Entry No. 12, p. 7 ¶ 13.

**17.** BROA # 89.

**18.** BROA # 96, Proof of Claim, p. 2.

**19.** BROA # 102.

**20.** BROA # 104, Amended Trustee's Motion to Dismiss Case for Failure to Make Payments.

**21.** BROA # 110, Order of Dismissal.

**22.** BROA # 150, Memorandum Opinion, p. 2.

**23.** BROA # 114, Voluntary Petition.

**24.** BROA # 115.

amended proof of claim,[25] both of which include claims for pre-petition arrearages totaling $86,003.25. This arrearage includes twenty-four (24) months of past-due mortgage payments totaling $37,906.56, and escrow advances of $43,940.87 that Wells Fargo made for property taxes and hazard insurance on the Property.[26]

In May of 2010 Oparaji initiated an adversary proceeding alleging that Wells Fargo was both judicially and equitably estopped from asserting claims in the Current Bankruptcy that were inconsistent with the claims that Wells Fargo asserted in the First Bankruptcy and seeking sanctions against Wells Fargo and its attorneys for presenting false proof of claims in the Current Bankruptcy.[27] Cross-motions for summary judgment were filed. In a Memorandum Opinion entered on December 29, 2010, the Bankruptcy Court granted Oparaji's motion for summary judgment on the theory of judicial estoppel, denied Oparaji's equitable estoppel claim as moot, and granted summary judgment in favor of Wells Fargo and its lawyers on Oparaji's sanctions claim.[28] In response to Oparaji's motion for clarification, the Bankruptcy Court issued an Amended Order explaining that the Allowed Claim portion of the Amended Summary Judgment Order did not set the claim amount with finality but, instead, set maximum claim amount limits.[29] By Order entered on June 15, 2011 (Docket Entry No. 7), the court granted Oparaji's Motion for Leave to File Interlocutory Appeal of the Bankruptcy Court's Amended Order.

## II. *Standard of Review*

Wells Fargo appeals the Bankruptcy Court's summary judgment in favor of Oparaji on the judicial estoppel claim. A district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment or order. *See* 28 U.S.C. § 158(a). This court usually reviews a grant of summary judgment *de novo*, applying the same standards as applied by the Bankruptcy Court. *See In re Carney*, 258 F.3d 415, 418 (5th Cir.2001). In this case, however, Oparaji argued in his motion for summary judgment that the Bankruptcy Court should apply the doctrine of judicial estoppel to bar Wells Fargo from seeking arrearages that it could have sought but did not seek in Oparaji's First Bankruptcy. The Bankruptcy Court granted Oparaji's motion, concluding that Oparaji correctly argued that judicial estoppel should apply.

Because judicial estoppel is an equitable doctrine, a bankruptcy court's power to apply judicial estoppel is discretionary; therefore, the exercise of that power is reviewed for abuse of discretion. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000). A bankruptcy court abuses its discretion when it "(1) applies an improper legal standard or follows improper procedures ..., or (2) rests its decision on findings of fact that are clearly erroneous." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005). The "clearly erroneous" standard allows this court to reverse the Bankruptcy Court's findings of fact "only if on the

---

25. BROA # 121. The Bankruptcy Court referred to this Proof of Claim as the "Current Proof of Claim." *See* BROA # 150, Memorandum Opinion, p. 2.

26. *Id.*

27. BROA # 127, Complaint Objecting to Wells Fargo's Secured Claim and for Sanctions.

28. BROA # 150.

29. BROA # 159.

entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Dennis,* 330 F.3d 696, 701 (5th Cir.2003). "Generally, an abuse of discretion only occurs where *no reasonable person* could take the view adopted by the trial court." *Whitehead v. Food Max of Mississippi, Inc.,* 332 F.3d 796, 803 (5th Cir.) (en banc) *cert. denied sub nom. Minor v. Kmart Corp.,* 540 U.S. 1047, 124 S.Ct. 807, 157 L.Ed.2d 694 (2003).

## III. *Analysis*

Wells Fargo argues that the Bankruptcy Court erred in granting summary judgment in favor of Oparaji on the judicial estoppel claim because (1) Wells Fargo cannot be bound by a position taken in a prior Chapter 13 bankruptcy proceeding that was dismissed before the debtor obtained a discharge; (2) Oparaji did not establish all necessary elements of a judicial estoppel claim; and (3) equity does not support the application of judicial estoppel against Wells Fargo in this case. Oparaji responds that the Bankruptcy Court did not err in granting partial summary judgment in his favor on the judicial estoppel claim because Bankruptcy Code § 349(b) does not bar the use of judicial estoppel with respect to a position taken in a dismissed bankruptcy case, and because the Bankruptcy Court correctly concluded that all the elements of judicial estoppel have been met in this case.

## A. 11 U.S.C. § 349 Does Not Bar the Use of Judicial Estoppel with Respect to a Position Taken in a Dismissed Bankruptcy Case

■ Asserting that "[c]ourts throughout the United States have uniformly held that 'the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in before the case was initiated,' " [30] Wells Fargo argues that it "cannot be bound by a proof of claim filed in a previous bankruptcy that was dismissed without debtor obtaining a discharge." [31] Wells Fargo explains that Oparaji

> initiated the underlying adversary proceeding to prevent Wells Fargo from claiming in the Current Bankruptcy debts which arose post-petition in relation to the First Bankruptcy but were not claimed in the First Bankruptcy. The debts which [Oparaji] seeks to prevent Wells Fargo from recovering include approximately twenty mortgage payments that [Oparaji] failed to pay between May 2005 (the first post-petition due date following the Agreed Order), and May 2007 (the date [Oparaji's] plan in the First Bankruptcy was modified to include ongoing post-petition mortgage payments), and $38,694.50 in property tax payments and hazard insurance premiums that Wells Fargo advanced post-petition on behalf of [Oparaji] during the First Bankruptcy.

> The bankruptcy court agreed with [Oparaji], holding that Wells Fargo was judicially estopped from claiming in the Current Bankruptcy any amounts that could have been, but were not, claimed in the Earlier Proof of Claim filed in the First Bankruptcy. This holding is in error. [32]

Citing 11 U.S.C. § 349, Wells Fargo argues that "[w]hen a bankruptcy case is dismissed without the debtor having obtained a discharge, the consequences of the

---

**30.** Brief of Appellant, Docket Entry No. 11, p. 9 (quoting *In re Sanitate,* 415 B.R. 98, 104 (E.D.Pa.2009) (citing 11 U.S.C. § 349)).

**31.** *Id.* at 8. *See also id.* at 8–15, and Reply Brief of Appellant, Docket Entry No. 14, pp. 2–7.

**32.** *Id.*

bankruptcy petition are negated, and the parties are restored to their rights and positions as they existed prior to the filing of the bankruptcy case." [33]

The Bankruptcy Court cited two cases in support of its holding that Wells Fargo could be bound by the Earlier Proof of Claim: *United States v. Standard State Bank*, 91 B.R. 874 (W.D.Mo.1988), and *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir.2001). In *Standard State Bank*, 91 B.R. at 878–79, the court determined that *res judicata* barred the plaintiff from relitigating lien priority issues previously determined by a confirmed Chapter 11 plan, despite the fact that the plan was subsequently dismissed. In *Hamilton*, 270 F.3d at 781–82, the court held that judicial estoppel barred a debtor from pursuing claims about which he had knowledge, but did not disclose during a previous Chapter 7 bankruptcy, even though the debtor's discharge was later vacated.

Wells Fargo correctly argues that *Standard State Bank* and *Hamilton* are distinguishable from this case because they involved bankruptcies filed under Chapters 11 and 7, respectively, and not Chapter 13. However, none of the authorities on which Wells Fargo relies in support of its argument that it cannot be bound in the Current Bankruptcy by a position taken in the First Bankruptcy preclude a court from applying judicial estoppel in Chapter 13 cases. *See, e.g., In re Sanitate*, 415 B.R. 98, 104 (E.D.Pa.2009) (citing 11 U.S.C. § 349 in support of its holding that debtor in second Chapter 13 case was unable to bind mortgage lender to amounts contained in plan confirmed in first Chapter 13 case that was later dismissed because absent a final judgment "[n]either res judicata nor issue preclusion apply"). Because judicial estoppel was not at issue in *Sanitate*, it provides little, if any, guidance in this case. The other cases on which Wells Fargo relies are similarly unhelpful because none of them address the precise issue now before the court, i.e., whether a bankruptcy court abuses its discretion by applying judicial estoppel to bar a mortgage lender from asserting claims for post-petition arrearages that were not disclosed in proofs of claims filed in a previous Chapter 13 bankruptcy that was dismissed without the debtor having obtained a discharge.

Although neither Oparaji nor the Bankruptcy Court has cited any case in which a court has applied judicial estoppel under analogous circumstances, 11 U.S.C. § 349, the section of the Bankruptcy Code on which Wells Fargo relies in support of its argument that it cannot be bound in the Current Bankruptcy by a position taken in the First Bankruptcy, is expressly quali-

**33.** *Id.* at 9 (quoting *In re Keener*, 268 B.R. 912, 920 (Bankr.N.D.Tex.2001)). In pertinent part, 11 U.S.C. § 349 provides:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title . . .

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

fied by the phrase "[u]nless the court, for cause, orders otherwise." The court is therefore not persuaded that 11 U.S.C. § 349 precludes the Bankruptcy Court from applying judicial estoppel in this case. Accordingly, the court concludes that the Bankruptcy Court did not abuse its discretion by concluding that 11 U.S.C. § 349 does not bar the use of judicial estoppel with respect to a position taken in a dismissed bankruptcy.

## B. The Bankruptcy Court Did Not Abuse Its Discretion by Applying Judicial Estoppel to Bind Wells Fargo in Oparaji's Current Bankruptcy to Arrearage Claims Stated in Earlier Proof of Claim Filed in Oparaji's First Bankruptcy

### 1. *Applicable Law*

■ Judicial estoppel is an equitable doctrine developed to protect the integrity of the judicial system. The doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 2154 n. 8, 147 L.Ed.2d 164 (2000)). *See also Reed v. City of Arlington*, 650 F.3d 571, 573 (5th Cir.2011) (en banc) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."). The Fifth Circuit has stated that judicial estoppel is "generally applied where 'intentional self-contradiction is being used as a means of obtaining an unfair advantage in a forum provided for suitors seeking justice.'" *In re Coastal Plains, Inc.*, 179 F.3d at 206 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)). *See also In re Paige*, 610 F.3d 865, 876 (5th Cir.2010).

■ Factors that courts consider in analyzing judicial estoppel arguments include (1) whether a party's position in a subsequent proceeding is "clearly inconsistent" with a position asserted in a prior case; (2) whether the court in the prior case accepted the party's position, thus creating "the perception that either the first or second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 121 S.Ct. at 1815. *See also Reed*, 650 F.3d at 574 (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir.2005) (observing that courts assessing whether to apply judicial estoppel look to see whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently")).

■ In the bankruptcy context "[j]udicial estoppel is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe*, 412 F.3d at 600. The Fifth Circuit has explained that the purpose of the doctrine in this context is to ensure "full and honest disclosure by debtors of all of their assets." *In re Coastal*, 179 F.3d at 197 (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996)). In *Coastal* the debtor, Coastal Plains, Inc., sued a lender shortly after Coastal filed bankruptcy for turnover of property and damages arising from the lender's prepetition possession of the property, but did not adjudicate Coastal's damages claim. Subsequently, Coastal's claim against the lender was sold, along with all of its assets, to Coastal's largest creditor. The creditor then pursued the damages claim against the lender and eventually obtained a multi-million-dollar verdict. *Id.*

at 202–03. The lender appealed arguing that the purchaser of the claim, as Coastal's successor, was judicially estopped from pursuing the claim because Coastal had failed to list the claim on its bankruptcy schedules. Judicial estoppel was rejected by both the bankruptcy court and district court because Coastal's failure to list the claim had been inadvertent.

The Fifth Circuit reversed and held that the bankruptcy court abused its discretion in failing to apply judicial estoppel to bar the claim. *Id.* at 204. The Fifth Circuit explained that a "review of the jurisprudence convinces us that, in considering judicial estoppel for *bankruptcy* cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Id.* at 210. The Fifth Circuit held that Coastal both knew of the facts giving rise to the inconsistent positions and had a motive to conceal the claims. *Id.* at 212 (observing that had the claims been disclosed, Coastal's unsecured creditors might have opposed lifting the stay, and the bankruptcy court might have reached a different decision). Coastal's CEO, who signed Coastal's schedules, relied on its attorneys to provide the appropriate information in the schedules and testified that the omission of the claim had been an "oversight." *Id.* In the face of this argument, the Fifth Circuit concluded that "Coastal's claimed 'inadvertence' is not the type that precludes judicial estoppel because Coastal knew of the facts giving rise to its inconsistent positions and had a motive to conceal the claims." *Id.*

Although *Coastal* involved a debtor's failure to disclose an asset, in *Matter of West Delta Oil Co., Inc.*, 2003 WL 21016578, *1 (5th Cir. April 10, 2003) (per curiam), the Fifth Circuit affirmed the application of judicial estoppel in the context of a Chapter 11 bankruptcy to bar creditor attorneys from asserting claims against the debtor for prepetition attorneys' fees purportedly owed but not disclosed in the attorneys' applications to be retained as debtor's special counsel in the bankruptcy proceeding, in the affidavits filed in support of those applications, or in the attorneys' post-petition applications for payment of fees. The Fifth Circuit adopted the opinion of the district court, which recognized that although in bankruptcy cases judicial estoppel is typically applied to bar debtors from pursuing claims that they failed to disclose to their creditors "the importance of full disclosure is not lessened in the case of material non-disclosure of a creditor." *Id.* at *3 n. 7. Quoting *In re Coastal Plains*, 179 F.3d at 208, for its observation that "the integrity of the bankruptcy system depends on full and honest disclosure by debtors ... [t]he interests of both the creditors ... and the bankruptcy court ... are impaired when the disclosure provided by the debtor is incomplete," the court concluded that "[t]his is no less true when the lack of full and honest disclosure is on the part of a creditor." *Id.*

### 2. *Application of the Law*

The Bankruptcy Court granted Oparaji's motion for summary judgment after concluding that Wells Fargo was judicially estopped from asserting in the Current Bankruptcy claims for post-petition arrearages in the First Bankruptcy that Wells Fargo could have, but did not, include in the Earlier Proof of Claim filed in the First Bankruptcy.

(a) The Bankruptcy Court Did Not Abuse Its Discretion in Concluding that Wells Fargo's Position in the Current Bankruptcy Is Clearly Inconsistent with Its Position in the First Bankruptcy

The Bankruptcy Court concluded that Wells Fargo took a clearly inconsis-

tent position in the Current Bankruptcy from that taken in the First Bankruptcy because the total dollar amount claimed for arrearages in the Current Bankruptcy differs substantially from the total dollar amount claimed for arrearages in the First Bankruptcy. Wells Fargo acknowledges that the dollar amounts claimed in the two bankruptcy proceedings differ, but argues that "this difference does not constitute the 'clearly inconsistent position' necessary to justify application of judicial estoppel."[34] Citing 11 U.S.C. § 1305, Wells Fargo argues that

> [t]he claim amounts differ, but this difference is a function of post-May 2005 mortgage arrearages and escrow advances which were not included in the Earlier Proof of Claim. These charges were all *post-petition* in relation to the First Bankruptcy.

Wells Fargo was not required to file a proof of claim for these post-petition arrearages. 11 U.S.C. § 1305 provides that a creditor *may* file a proof of claim for post-petition claims, indicating that the filing of a proof of claim is permitted but not required....

... The bankruptcy court seemingly took the position that if Wells Fargo chose to file an amended claim for the post-petition arrearages, it was then obligated to include all post-petition arrearages in the amended claim. There is no statutory support for such an interpretation....

Pursuant to § 1305, Wells Fargo was not required to claim the post-petition arrearages, and even if it chose to claim some portion of that amount, it was not required to claim the entire amount.

The bankruptcy court's conclusion that the proofs of claim are inconsistent is based on the legal proposition that Wells Fargo was obligated to include all post-petition arrearages in the proof of claim if it chose to include some post-petition arrearages in the claim ... there is no such legal obligation. Absent this legal obligation, the proofs of claim cannot be considered "inconsistent" because they are easily reconcilable ... the difference between the two proofs of claim is a function of post-May, 2005, mortgage arrearages and escrow advances which were not included in the proof of claim filed in the First Bankruptcy, but were included in the current proof of claim.[35]

Without disputing Wells Fargo's contention that "the difference between the two proofs of claim is a function of post-May, 2005, mortgage arrearages and escrow advances" that Wells Fargo did not include in the proofs of claim filed in the First Bankruptcy, but included in the current proof of claim,[36] Oparaji argues that

> Wells Fargo misinterprets the Bankruptcy Court's opinion. The Bankruptcy Court never asserted that Wells Fargo was obligated to file an amended claim. The Bankruptcy Court simply made the common sense observation that since the amended proofs of claim asserted claims for post petition arrearages, the amendments should have accurately included all of the post petition arrearages, not only some of them. The Bankruptcy Court correctly concluded

---

34. Brief of Appellant, Docket Entry No. 11, p. 16.

35. *Id.* at 18–19.

36. *Id. See also id.* at 20–21 (setting forth a detailed description of Oparaji's failure to make post-petition mortgage payments directly to Wells Fargo from May of 2005 to...., and Wells Fargo's post-petition escrow advances to pay property taxes and hazard insurance premiums).

that "... even when an amended proof of claim is not required, a creditor who chooses to file one is obligated to file an accurate amendment. The integrity of the bankruptcy claims process is no less harmed by a voluntary inaccurate filing than by a mandatory one. The Court cannot be expected to rely less on the accuracy of voluntary filings."[37]

 In the Fifth Circuit if a party fails to disclose a claim that the party is required to disclose to a bankruptcy court, that party takes an inconsistent position by later pursuing that undisclosed claim regardless of whether that party is a debtor or a creditor. *See In re Coastal*, 179 F.3d at 197 (debtor); *West Delta Oil*, 2003 WL 21016578, *3 n. 7 (creditor). In such cases the threshold inquiry is whether the party was required to disclose the claim to the bankruptcy court. *See In re Coastal*, 179 F.3d at 208 ("the importance of this disclosure duty cannot be overemphasized"); *West Delta Oil*, 2003 WL 21016578, *3 (creditors did not dispute that they had an affirmative duty under Federal Rule of Bankruptcy Procedure 2014 to disclose their prepetition claims and court concluded that "when these attorneys failed to disclose their substantial claims as required by law, [they] in effect averred that no such claims existed").

There is no dispute that Wells Fargo was not legally required to pursue its claims for post-petition arrearages in the First Bankruptcy. Title 11 section 1305 expressly provides that for "[f]iling and allowance of postpetition claims[,] ... A proof of claim *may* be filed by any entity that holds a claim against the debtor— ..." 11 U.S.C. § 1305 (emphasis added). Nevertheless, the Bankruptcy Court concluded that if Wells Fargo chose to file a claim for arrearages, Wells Fargo was obligated to disclose all arrearages. The Bankruptcy Court explained that

> [i]n the Earlier Proof of Claim, filed December 23, 2008, Wells Fargo claimed $2,599.81 in post-petition arrearages. That amount should have included all arrearages that had accrued after September 2004, when Oparaji filed the First Bankruptcy, and before December 23, 2008. *See* 11 U.S.C. § 1305. According to Wells Fargo's Current Proof of Claim, it did not. The Current Proof of Claim asserts $37,906.56 in pre-petition arrearages, comprised of 24 missed monthly payments. Ten of these monthly payments were due before December 23, 2008 and could have been claimed as post-petition arrearages in the Earlier Proof of Claim. They were not. Instead, Wells Fargo affirmatively represented that the amount of post-petition arrearages was $2,599.81, an amount that did not include any of the missed payments that are now claimed as pre-petition arrearages.

> The amounts cannot be reconciled. Wells Fargo argued at the hearing that the amounts could be reconciled by noting which charges had been left off. However, this argument is simply a statement of why the proofs of claim are inconsistent. The omission of charges that could have been included is a clear inconsistency between the two proofs of claim.[38]

Neither the Bankruptcy Court nor Oparaji has cited any legal authority to support the Bankruptcy Court's conclusion that Wells Fargo's claim for some post-petition debt created an obligation to disclose all post-petition debt. The only case cited by either party to this action that even raises

---

37. Appellee's Brief, Docket Entry No. 12, p. 30 (quoting BROA # 150, p. 9).

38. BROA # 150, Memorandum Opinion, pp. 5–6.

this issue is *In re Burford,* 231 B.R. 913 (Bankr.N.D.Tex.1999), which Wells Fargo cites for having reached the opposite conclusion from that reached by the Bankruptcy Court in this case.

In *In re Burford,* 231 B.R. 913 (Bankr. N.D.Tex.1999), the court was asked to decide whether the Internal Revenue Service (IRS) was obligated to file a proof of claim for post-petition interest due on a pre-petition tax debt. The court concluded that the Bankruptcy Code imposed no such obligation and that even if the IRS had voluntarily filed a proof of claim, the Bankruptcy Code imposed no obligation on the IRS to include the entire amount of its post-petition claim. *Id.* at 922. Nevertheless, the court estopped the IRS from collecting the post-petition interest it sought "because of the preclusive effect of a confirmation order requiring the debtor to fully retire the tax debt coupled with the actions taken by the IRS to provide the amortization schedule necessary for the debtor to comply with that requirement." *Id.*

The result reached in *Burford* is similar to the result reached by the Bankruptcy Court in this case. The *Burford* court estopped the IRS from collecting post-petition interest that the IRS could have sought during the debtor's bankruptcy based on the preclusive effect of a confirmed plan that required the debtor to fully retire his tax debt that was, in turn, based on affirmative representations made by the IRS. Here, the Bankruptcy Court estopped Wells Fargo from asserting in the Current Bankruptcy post-petition arrearages that Wells Fargo could have sought in the First Bankruptcy based on the preclusive effect of a confirmation order that required the debtor to fully retire his mortgage debt that was, in turn, based on affirmative representations made by Wells Fargo. Despite the *Burford* court's conclusion that the Bankruptcy Code im-

poses no obligation on creditors to file claims for post-petition debt, or to include the entire amount of post-petition debt in any such claim that is filed, the court is not persuaded that *Burford* supports Well Fargo's argument that the Bankruptcy Court erred in concluding that the positions Wells Fargo presented in the First and Current Bankruptcies are clearly inconsistent.

The Bankruptcy Code does not require creditors to claim or even to disclose the entire amount of a debtor's post-petition arrearages. However, once Wells Fargo chose to seek post-petition arrearages, and represented to the Bankruptcy Court via multiple amendments to its proof of claims that the arrearages sought were "total arrearages," the Bankruptcy Court could reasonably conclude that when, in a subsequent proceeding, Wells Fargo presented a vastly different representation of the earlier post-petition arrearages, that the two representations were inconsistent. Wells Fargo has not cited any section of the Bankruptcy Code that requires Bankruptcy Courts to provide creditors a greater ability to present inconsistent positions than other courts allow litigants. Accordingly, the court concludes (1) that the Bankruptcy Court's conclusion regarding the inconsistency of Wells Fargo's positions in the First and Current Bankruptcies was not based on an improper legal standard or on findings of fact that are clearly erroneous, and (2) that the Bankruptcy Court did not abuse its discretion by concluding that the positions Wells Fargo presented in Oparaji's two bankruptcy cases were clearly inconsistent.

(b) The Bankruptcy Court Did Not Abuse Its Discretion in Concluding that the Court in the First Bankruptcy Accepted Wells Fargo's Prior, Inconsistent Position

The Fifth Circuit has explained that the "judicial acceptance" requirement

does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter, or as part of a final disposition.

*In re Coastal Plains,* 179 F.3d at 206 (quoting *Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 473 (6th Cir.1988)). In this case the Bankruptcy Court concluded that it had accepted Wells Fargo's prior, inconsistent position in the First Bankruptcy "when it approved Oparaji's plan modification in May 2009."[39] The Bankruptcy Court explained that "Oparaji's proposed payments in the modification were intended, and believed by the Court, to cure the arrearages on the Wells Fargo mortgage. Relying on the accuracy of the amounts in the Earlier Proof of Claim, the Court approved the modification."[40]

Wells Fargo argues that "[f]or purposes of judicial estoppel, the bankruptcy court's acceptance of the [First Bankruptcy] plan was negated by the [court's] subsequent dismissal of the First Bankruptcy and the resultant voiding of [Oparaji's] Chapter 13 plan."[41] In support of its argument "that subsequent events can negate judicial acceptance for the purposes of judicial estoppel,"[42] Wells Fargo cites *Coal Resources Inc. v. Gulf & Western Industries, Inc.,* 865 F.2d 761, 773 (6th Cir.1989). In *Coal Resources* the Sixth Circuit refused to apply judicial estoppel against a party who asserted inconsistent statements of value in separate trials because the first trial verdict was reversed on appeal leaving the judicial acceptance requirement unsatis-

fied. *Id.* The Sixth Circuit explained that a decision adopting a party's earlier position that is overturned on appeal, does not impugn the integrity of the judicial process because there is no longer a risk of inconsistent court determinations.

Wells Fargo argues that

[t]he logic behind the rule applied in *Coal Resources* ... is sound. If a court's acceptance of a party's prior position is negated by subsequent events, the application of judicial estoppel is unwarranted because no risk of inconsistent results exists ... the risk "evaporates." ... That is exactly the case here. The bankruptcy court's approval of Debtor's Chapter 13 plan in the First Bankruptcy was negated when the First Bankruptcy was dismissed and the Chapter 13 plan associated with that case was vacated. There is no risk of inconsistent results between the First Bankruptcy and the Current Bankruptcy. Because the dismissal of the First Bankruptcy and resultant voiding of the Chapter 13 plan from that case negated the bankruptcy court's prior approval of that plan, there is no judicial acceptance for the purposes of Debtor's judicial estoppel claim.

. . .

Upon dismissal of the First Bankruptcy, Debtor's Chapter 13 plan from that case was voided and any decisions made with respect to that plan, including the bankruptcy court's approval of the plan, were undone. For the purposes of judicial estoppel, the bankruptcy court's acceptance of the Earlier Proof of Claim was negated by the subsequent dismiss-

---

**39.** *Id.* at 6.

**40.** *Id.*

**41.** *Id.*

**42.** *Id.* at 13.

al of the First Bankruptcy. There is no judicial acceptance.[43]

Despite Wells Fargo's reliance on *Coal Resources* in support of its argument that the Bankruptcy Court erred in concluding that it had accepted a prior, inconsistent position presented by Wells Fargo in the First Bankruptcy, the court concludes that *Coal Resources* does not preclude the application of judicial estoppel in this case. *Coal Resources* stands for the proposition that judicial estoppel should not apply when the appellate court reverses on an issue that directly relates to the prior, inconsistent position. *See Coal Resources,* 865 F.2d at 773. *See also Trustees in Bankruptcy of North American Rubber Thread Co., Inc. v. United States,* 593 F.3d 1346, 1359 (Fed.Cir.2010). But here, the Bankruptcy Court's decision to dismiss the First Bankruptcy was not related to Wells Fargo's prior, inconsistent position. Instead, the dismissal was granted upon motion of the Trustee because (1) Oparaji had defaulted on his plan payments, and (2) the case had exceeded the statutory time limitation set by 11 U.S.C. § 1322(d).[44] Because neither of the reasons for dismissing the First Bankruptcy reversed or otherwise impacted the Bankruptcy Court's acceptance of Wells Fargo's prior, inconsistent position regarding claims for postpetition arrearages, the court is not persuaded that the Bankruptcy Court erred in concluding that it had accepted a position urged by Wells Fargo in the First Bankruptcy regarding those claims, that the Bankruptcy Court's conclusion regarding its past acceptance of Wells Fargo's position was clearly erroneous, or that the Bankruptcy Court abused its discretion by concluding that it had accepted Wells Fargo's prior, inconsistent position during the First Bankruptcy.

(c) The Bankruptcy Court Did Not Abuse Its Discretion by Concluding that Wells Fargo's Inconsistency Was Not Inadvertent

■ The Bankruptcy Court concluded that Wells Fargo's "inconsistency was not inadvertent."[45] Citing *Kane v. National Fire Ins. Co.,* 535 F.3d 380, 386 (5th Cir. 2008), for its holding "courts determine inadvertence by looking at whether the debtor lacked knowledge of the claim or whether the debtor had no motive for concealing the claim,"[46] the Bankruptcy Court explained that

[n]either of the *Kane* factors is present here. First, Wells Fargo did not lack knowledge. Wells Fargo kept the records of payments and charges on Oparaji's account, and it had knowledge of the amounts that could have been included in the Earlier Proof of Claim. As the court in *Engines Southwest, Inc. v. Kohler Company* noted, "Mistake or inadvertence is an applicable defense to judicial estoppel if the offending party did not have the relevant correct information at its disposal to begin with." 263 F.App'x [Fed.Appx.] 411, 413 (5th Cir. 2008). Wells Fargo had all the relevant correct information at its fingertips.

Second, Wells Fargo has not met its burden of proving lack of motive. Wells Fargo's motion for summary judgment asserts a lack of motive, but this assertion is not supported by any evidence. Although Wells Fargo argues that it lost money as a result of the mistake and

---

**43.** Reply Brief of Appellant, Docket Entry No. 14, pp. 13–14.

**44.** BROA # 104, Amended Trustee's Motion to Dismiss Case for Failure to Make Payments.

**45.** BROA # 150, Memorandum Opinion, p. 6.

**46.** *Id.*

therefore could not have had a motive for claiming lower amounts on the Earlier Proof of Claim, the Court notes that Wells Fargo could have had a number of motives for the omission. For example, Wells Fargo may have wished to save money by placing unverified amounts in its proof of claim rather than spending the funds to determine the correct amount. Or, Wells Fargo may have wished to avoid spending legal fees to litigate a dispute over the amounts. Wells Fargo may have intended to facilitate the success of Oparaji's bankruptcy, believing that a successful bankruptcy plan would result in a higher payoff to Wells Fargo. These plausible motives defeat Wells Fargo's inadvertence defense. *See Mims v. Browning Mfg. (In re Coastal Plains)*, 179 F.3d 197, 211 (5th Cir.1999) (disallowing inadvertence defense where court could identify plausible motives for concealment of claims, including preventing unsecured creditors from opposing lifting stay or keeping creditors from bidding more at the foreclosure auction for debtor's assets).[47]

Wells Fargo has not challenged the Bankruptcy Court's conclusion on this point. The court concludes that the Bankruptcy Court did not abuse its discretion by concluding that Wells Fargo's inconsistency was not inadvertent.

### 3. *Conclusions*

For the reasons explained above, the court concludes that the Bankruptcy Court considered each of the three factors that courts analyze when deciding whether to apply judicial estoppel and reached conclusions that are not based on an improper legal standard or on findings of fact that are clearly erroneous. Because Wells Fargo does not argue, and the court does not find, that "*no reasonable person* could take the view adopted by the [Bankruptcy] Court," *Whitehead*, 332 F.3d at 803, the court concludes that the Bankruptcy Court did not abuse its discretion by applying the doctrine of judicial estoppel against Wells Fargo.

### C. Equity Does Not Preclude Application of Judicial Estoppel Against Wells Fargo

Wells Fargo argues that "equity does not support the application of judicial estoppel against [it]."[48] In support of this argument, Wells Fargo asserts that "[j]udicial integrity is not called into question"[49] because

[t]here can be no threat of inconsistent results between the First Bankruptcy and the Current Bankruptcy because case law clearly provides that the consequences of the First Bankruptcy were negated upon dismissal and that neither party can be bound by a position taken in a prior bankruptcy that resulted in pre-discharge dismissal.[50]

This is essentially the same argument that Wells Fargo has already urged in support of its contention (1) that 11 U.S.C. § 349 bars the Bankruptcy Court from applying judicial estoppel under the circumstances of this case, and (2) that the Bankruptcy Court erred in concluding that it had accepted Wells Fargo's prior, inconsistent position in the First Bankruptcy. For the reasons stated in §§ III.A and III.B.2(b), above, the court has already concluded that these arguments do not provide a

---

**47.** *Id.* at 6–7.

**48.** Brief of Appellant, Docket Entry No. 11, pp. 24–25; Reply Brief of Appellant, Docket Entry No. 14, pp. 14–16.

**49.** Reply Brief of Appellant, Docket Entry No. 14, p. 15.

**50.** *Id.*

sufficient basis for concluding that the Bankruptcy Court abused its discretion by applying judicial estoppel in this case.

 Wells Fargo also asserts that "[e]quity is on the side of Wells Fargo."[51] Wells Fargo explains that Oparaji

is asking this Court to invoke judicial estoppel so that he may avoid liability for over $70,000.00 in debts that he clearly owes. These debts include not only missed mortgage payments, but property taxes and insurance premiums that Wells Fargo paid on Debtor's behalf. Judicial estoppel should not be applied to provide a windfall to Debtor at the expense of Wells Fargo.[52]

The Fifth Circuit has stated that "[j]udicial estoppel is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe*, 412 F.3d at 600. Moreover, lack of awareness of the duty to disclose is not sufficient to avoid the application of judicial estoppel. *See id.* at 601 (explaining that the non-disclosing party must show that she was unaware of the facts giving rise to her claims, not of her duty to disclose her claims). Some of Wells Fargo's claims for post-petition arrearages had undisputedly accrued as of the date that Wells Fargo filed its Third Amended Proof of Claim on December 23, 2008.[53] Therefore, Wells Fargo cannot and does not argue that it lacked knowledge of the facts giving rise to these particular claims as of that date. Moreover, the Earlier Proof of Claim that Wells Fargo filed on December 23, 2008, identified a "Total Arrearage Claim."[54] Under these circumstances it was not unreasonable for the Bankruptcy Court to conclude that the Earlier Proof of Claim included all of Wells Fargo's claims for post-petition arrearages, and that no other such claims existed. Therefore, it was not inequitable for the Bankruptcy Court to estop Wells Fargo from asserting in the Current Bankruptcy claims for post-petition arrearages from the First Bankruptcy that Wells Fargo chose not to disclose in the First Bankruptcy.

## IV. *Conclusions and Order*

Because the court has concluded (1) that 11 U.S.C. § 349 does not bar the application of judicial estoppel to a position taken in a dismissed bankruptcy case, (2) that the Bankruptcy Court did not abuse its discretion by applying judicial estoppel against Wells Fargo, and (3) that equity does not preclude application of judicial estoppel to Wells Fargo in this case, the court concludes that the Bankruptcy Court's Amended Order of January 14, 2011, should be affirmed.

## *ORDER*

Wells Fargo's Motion to Reconsider Pursuant to Federal Rule of Bankruptcy Procedure 8015 (Docket Entry No. 17) is **DENIED.**

---

51. *Id.* at 16.

52. *Id.*

53. BROA # 79, Proof of Claim.

54. *Id.* at 2.