# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2012

Lyle W. Cayce
Clerk

No. 11-20871

_____

In the Matter of:  TITUS CHINEDU OPARAJI,

     Debtor

------------------------------

WELLS FARGO BANK, N.A., successor by merger to Wells Fargo Home Mortgage, Incorporated, as servicing agent for Deutsche Bank National Trust,

     Appellant

v.

TITUS CHINEDU OPARAJI,

     Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before REAVLEY, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

     Appellant Wells Fargo Bank, N.A. appeals the District Court's Amended Order granting Appellee Titus Oparaji's motion for summary judgment on the

No. 11-20871

theory of judicial estoppel. For the reasons explained below, we find that judicial estoppel is not warranted. We REVERSE and REMAND for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 31, 2002, Titus Chinedu Oparaji ("Debtor") executed a Balloon Note and Deed of Trust in favor of Wells Fargo Home Mortgage, Inc. ("Wells Fargo") for the purchase of a home in Sugar Land, Texas (the "Property"). The note had a principal balance of $180,850.00 and accrued interest at an annual rate of 9.50%. On September 2, 2004, after failing to make multiple scheduled payments, Debtor filed for relief under Chapter 13 of the Bankruptcy Code ("First Bankruptcy"). Under the resulting bankruptcy plan, Debtor was required to pay set sums of money to a trustee, who would then use portions of each sum to satisfy Debtor's pre-petition arrearage to Wells Fargo. Debtor was also required to continue his ongoing, post-petition mortgage payments directly to Wells Fargo.

Less than a year after filing the First Bankruptcy, Debtor fell behind on his post-petition mortgage payments to Wells Fargo. On March 3, 2005, Wells Fargo filed a motion for relief from the automatic stay that was in place so that it could proceed with foreclosure of Debtor's Property as provided in the Deed of Trust. The Bankruptcy Court entered an Agreed Order on May 13, 2005, conditioned the automatic stay as to Wells Fargo, and required Debtor to modify his plan to provide for the post-petition mortgage arrearages owed to Wells Fargo.

On May 20, 2005, pursuant to the court's order, Debtor filed a motion to modify his Chapter 13 plan to add the $2,599.81 in post-petition mortgage

No. 11-20871

arrearages. Wells Fargo then filed an amended proof of claim asserting a total arrearage amount of $15,209.17, including $2,599.81 in post-petition mortgage arrearages and $6,225.10 in escrow shortages. The Bankruptcy Court approved this Modified Chapter 13 Plan. On October 18, 2005, Wells Fargo again amended its proof of claim to assert $9,948.67 in total arrearages, including $2,599.81 in post-petition arrearages and $964.60 in escrow shortages.

Two years later, on May 22, 2007, Debtor filed another motion to modify his Chapter 13 Plan to provide for the ongoing, post-petition mortgage payments owed to Wells Fargo to be paid through the bankruptcy plan. Importantly, this plan addressed only the *ongoing* mortgage payments owed to Wells Fargo. It did not provide for *prior* post-petition mortgage payments that were already in default at that time. The Bankruptcy Court approved this Second Modified Chapter 13 Plan.

On December 23, 2008, Wells Fargo amended its proof of claim once more to include delinquent taxes from 2006 in the amount of $7,399.02 that it had advanced on behalf of Debtor. On April 14, 2009, Debtor filed a motion to modify his Chapter 13 Plan to become current on his plan payments to the trustee. The Bankruptcy Court approved this Third Modified Chapter 13 Plan. On October 5, 2009, the trustee filed a motion to dismiss the bankruptcy because Debtor was in default of $7,809.18 in plan payments and the case had exceeded the statutory time limit set by 11 U.S.C. § 1322(d). On November 12, 2009, the Bankruptcy Court entered an order dismissing the First Bankruptcy without discharging Debtor.

Throughout the First Bankruptcy, Debtor missed several post-petition mortgage payments to Wells Fargo, thus causing his mortgage arrearages to

No. 11-20871

increase substantially over time. In fact, during this time, Debtor failed to make twenty post-petition mortgage arrearage payments to Wells Fargo. In addition, Debtor failed to maintain hazard insurance or pay property taxes on the Property. Pursuant to the Deed of Trust, Wells Fargo made these payments totaling $38,694.50 on behalf of Debtor to protect its interest in the collateral. Furthermore, following the dismissal of the First Bankruptcy, Debtor failed to make four additional mortgage payments and failed to pay $13,817.17 in property taxes.

On February 1, 2010, Debtor initiated the current bankruptcy ("Second Bankruptcy"). In response, Wells Fargo filed a proof of claim that included $86,003.25 in pre-petition arrearages to cover twenty-four missed mortgage payments totaling $37,906.56 and escrow advances totaling $43,940.87 paid by Wells Fargo for property taxes and hazard insurance on behalf of Debtor. Debtor then initiated this lawsuit, challenging the amount of Wells Fargo's claim and seeking to prevent Wells Fargo from pursuing portions of that claim based on a theory of judicial estoppel.

Both parties filed motions for summary judgment. The Bankruptcy Court granted summary judgment in favor of Debtor, finding that Wells Fargo was judicially estopped from filing a claim in the Second Bankruptcy for any amounts that could have been, but were not, claimed in the First Bankruptcy. Wells Fargo appealed this ruling to the District Court, which found that the Bankruptcy Court did not abuse its discretion. Wells Fargo now appeals to this Court, arguing that the District Court erred in affirming the award of summary judgment in favor of Debtor on the judicial estoppel claim.

No. 11-20871

## II.  STANDARD OF REVIEW

Here, we review the District Court's decision under the same standard of review that the District Court applied to the Bankruptcy Court's decisions.  *See Wells Fargo Bank of Tex., N.A. v. Sommers*, 444 F.3d 690, 694 (5th Cir. 2006). Thus, we review the grant of summary judgment *de novo* and the application of judicial estoppel for abuse of discretion.

The decision to invoke the doctrine of judicial estoppel is typically reviewed for abuse of discretion.  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).  A court abuses its discretion when it bases its decision on an incorrect view of the law or a clearly erroneous assessment of the evidence.  *In re Blast Energy Servs., Inc.,* 593 F.3d 418, 423 (5th Cir. 2010).  However, "an abuse of discretion does not mean a mistake of law is beyond appellate correction."  *Coastal Plains*, 179 F.3d at 205 (citation omitted).

A grant of summary judgment is generally reviewed *de novo.  Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (5th Cir. 2001).  This Court has stated that it will affirm a grant of summary judgment only if, "viewing that evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the district court correctly applied the relevant substantive law."  *Id.*

## III.  DISCUSSION

The doctrine of judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position," *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988), particularly in situations where "intentional self-

No. 11-20871

contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (internal citation omitted). We have previously emphasized that judicial estoppel is "intended to protect the judicial system[] *rather than the litigants*[.]" *Coastal Plains*, 179 F.3d at 205 (emphasis in original). As such, it serves the "clear and undisputed jurisprudential purpose" of "protect[ing] the integrity of the courts." *Id.* at 205 n.2 (citation omitted). Because the integrity of the judiciary would not be threatened by allowing Wells Fargo to proceed with its increased proof of claim in the Second Bankruptcy, we find that the District Court abused its discretion in determining that judicial estoppel was appropriately applied.

Courts in the Fifth Circuit generally consider three criteria when evaluating a defense of judicial estoppel, including whether: (1) the party against whom judicial estoppel is sought has asserted a legal position that is "plainly inconsistent" with a position asserted in a prior case; (2) the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled; and, (3) the party to be estopped has not acted inadvertently. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). The District Court incorrectly determined that Wells Fargo asserted a legally inconsistent position that was accepted by the Bankruptcy Court, thus resulting in an unwarranted grant of judicial estoppel against Wells Fargo.[1]

---

[1]By choosing not to address the issue in its briefing to this Court, Wells Fargo has waived the issue of inadvertence. As a result, only the first two factors will be addressed.

6

No. 11-20871

A. Clearly Inconsistent Legal Positions

Debtor alleges, and the lower courts agree, that Wells Fargo has adopted a plainly inconsistent position in the Second Bankruptcy as compared to its claims for post-petition arrearages in the First Bankruptcy. In order to come to that conclusion, the District Court determined that creditors such as Wells Fargo are legally required to include all accrued post-petition arrearages in each amended claim they submit. *In re Oparaji*, 458 B.R. 881, 891-92 (S.D. Tex. 2011) ("[s]ince [Wells Fargo's] amended proofs of claim asserted claims for post petition arrearages, the amendments should have accurately included all of the post petition arrearages, not only some of them."). The course of events leading up to the filing of this case began in 2004, when Debtor filed the First Bankruptcy. Over the next five years, Wells Fargo filed multiple proofs of claim and did not include all of the post-petition arrearages owed to it by Debtor in each amended proof of claim. As a result, the District Court found that Wells Fargo's claims in the First and Second Bankruptcies were inconsistent as a matter of law and invoked the doctrine of judicial estoppel to prevent Wells Fargo from proceeding with its increased claim. However, this interpretation of the relevant statute, 11 U.S.C. § 1305,[2] is overly broad and constitutes an abuse of discretion subject to reversal by this Court.

The District Court attempts to rationalize this holding by analogizing it to a situation in which a debtor fails to disclose an asset in bankruptcy court. *Oparaji*, 458 B.R. at 889-90. According to the District Court, both debtors and creditors are bound by the requirement of full disclosure in a bankruptcy. The

---

[2]11 U.S.C. § 1305(a) instructs that "[a] proof of claim *may* be filed by any entity that holds a claim against the debtor . . ." (emphasis added).

District Court acknowledged that "judicial estoppel is typically applied to bar *debtors* from pursuing claims that they failed to disclose to their creditors," but nonetheless applied this requirement to Wells Fargo on the ground that "the importance of full disclosure is not lessened in the case of a material non-disclosure of a *creditor*." *Id.* at 890 (quoting *Coastal Plains*, 179 F.3d at 208 (internal quotations omitted) (emphasis added)). This argument fails to appreciate the difference between a debtor who has failed to disclose an asset and a creditor who has failed to include all accrued interest in each revised claim. In the first instance, the creditor has no way of knowing about the concealed asset except through the debtor's disclosure. In the second instance, however, the debtor has the ability and responsibility to keep track of his outstanding debt.

More importantly, the District Court has not identified any statute or judicial precedent that imposes a legal responsibility on Wells Fargo to seek the full amount to which it is entitled in each amended claim. While debtors are indisputably required to disclose all assets to the court, this requirement has not been applied to creditors. Although the District Court conceded that "[t]here is no dispute that Wells Fargo was not legally required to pursue its claims for post-petition arrearages in the First Bankruptcy," it nonetheless determined that "if Wells Fargo chose to file [such] a claim . . . [it] was obligated to disclose all arrearages." *Id.* at 892.

The only case cited by the District Court in support of this novel theory is *In re Burford*, 231 B.R. 913 (N.D. Tex. 1999). *Burford*, however, is distinguishable. In *Burford*, the debtor claimed that the creditor was equitably estopped from filing a post-petition claim because the creditor had not sought to

No. 11-20871

collect that sum during the previous bankruptcy. *Id.* at 917. The debtor argued that he relied, to his detriment, on a clause in an earlier confirmation order that required the creditor to create a payment schedule that would "fully retire the debt." *Id.* at 920. The court agreed with the debtor and found that the creditor was equitably estopped from claiming the increased amount since it had previously represented that the debtor did not owe additional interest. *Id.* at 922. The facts supporting the application of equitable estoppel in *Burford* cannot be analogized to the facts in this case since the court in *Burford* focused primarily on the creditor's explicit commitment to "fully retire the [tax] debt." *Id.* Furthermore, as *Burford* involved the application of equitable estoppel, the debtor's reliance on the creditor's statement became a dispositive issue.[3] *Id.* at 921.

In contrast, Debtor has neither sought relief under the doctrine of equitable estoppel nor identified any similar commitments made by Wells Fargo to fully retire Debtor's debt. At best, Debtor has inferred a commitment by Wells Fargo to retire the debt in full – a far cry from the explicit commitment made by the creditor in *Burford*. The District Court's holding thus runs counter to this circuit's expressed reluctance to apply judicial estoppel in situations where a party's alleged change of position is "merely implied rather than clear and express." *See In re Condere Corp.*, 226 F.3d 642, 2000 WL 1029098, at *3 (5th

---

[3]As we have previously explained:

> "Judicial estoppel is distinct from equitable estoppel . . . which focuses on the relationship between the parties and applies where one of the parties detrimentally has relied upon the position taken by the other party in an earlier proceeding. In those circumstances, the party that induced reliance is estopped from subsequently arguing a contrary position."

*Texaco, Inc. v. Duhe*, 274 F.3d 911, 923 n.16 (5th Cir. 2001).

No. 11-20871

Cir. 2000) ("This circuit has never held that judicial estoppel is appropriate when a party's change of position is merely implied rather than clear and express.").

In its opinion, the District Court essentially broadens the application of § 1305 by requiring creditors to claim the entirety of their accrued arrearages if they choose to submit a claim at all. This unprecedented interpretation of § 1305 rendered Wells Fargo's claim legally inconsistent and triggered the application of judicial estoppel. However, as we find that Wells Fargo was not required to include all of its post-petition arrearages in the amended claims, those claims were not inconsistent as a matter of law. The District Court's erroneous determination that Wells Fargo's claims were "plainly inconsistent" constitutes an abuse of discretion and is therefore subject to reversal.

B. Judicial Acceptance

The second requirement for the application of judicial estoppel, judicial acceptance, ensures that judicial estoppel is only applied in situations where the integrity of the judiciary is jeopardized. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982). "Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists." *Id.* Neither party disputes that Debtor's bankruptcy was accepted by the Bankruptcy Court for the purposes of judicial estoppel. The issue at hand instead turns on whether the court later revoked this acceptance by dismissing the bankruptcy. Since we hold that Wells Fargo did not assert legally inconsistent positions in the proceedings below, we need not even reach this issue. However, we will briefly address the reasons why the Bankruptcy Court's acceptance of Wells Fargo's claims was revoked when Debtor's bankruptcy was dismissed without a discharge.

No. 11-20871

Although none of the cases cited by the parties are directly on point, the weight of existing precedent is in favor of Wells Fargo. Under 11 U.S.C. § 349(b), "the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in *before* the case was initiated." *In re Sanitate*, 415 B.R. 98, 104 (Bankr. E.D. Pa. 2009). Many courts have interpreted this statute to mean that dismissal of a bankruptcy case restores the *status quo ante*. *Id.* at 105; *see also In re Crump*, 467 B.R. 532, 535 (Bankr. M.D. Ga. 2010). As the *Sanitate* court notes, "[t]hese broad readings are in harmony with Congress' stated intent that the purpose of this section is to 'undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" 415 B.R. at 105 (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 48-49 (1977)). Wells Fargo convincingly argues that, since the Bankruptcy Court dismissed Debtor's bankruptcy plan without granting a discharge, the court's acceptance of that plan was negated and the parties were no longer bound by its terms.

Debtor's arguments to the contrary fail to appreciate the nature of a Chapter 13 plan as an "exchanged for bargain between the debtor and the debtor's creditors[.]" *In re Hufford*, 460 B.R. 172, 177 (Bankr. N.D. Ohio 2011). As such, "when a debtor fails to fulfill their [*sic*] end of the bargain because of the dismissal of their case, a resulting finding that their confirmed Chapter 13 plan is terminated serves to prevent a debtor from obtaining the benefit of those terms in a plan which are [*sic*] advantageous to the debtor." *Id.* Debtor broke his agreement with Wells Fargo when his failure to make payments resulted in the bankruptcy's being dismissed without a discharge. He cannot now seek relief under that same agreement and cannot convincingly argue that equity is

11

No. 11-20871

on his side.

At its core, judicial estoppel is an "equitable remedy [that] must be applied so as to avoid inequity." *Love*, 677 F.3d at 273 n.12 (Haynes, J., dissenting). In an attempt to justify its decision to apply judicial estoppel, the District Court notes several possible motives behind Wells Fargo's submission of the incomplete arrearage claims in the First Bankruptcy. None of them, however, demonstrate that Wells Fargo received a disproportionate benefit from its actions. The District Court speculates that Wells Fargo wanted to "facilitate the success of [Debtor's] bankruptcy, believing that a successful bankruptcy plan would result in a higher payoff to Wells Fargo." *Oparaji*, 458 B.R. at 896. But, taken as true, this still does not show that Wells Fargo gained an unfair benefit at Debtor's expense. At best, it shows that Wells Fargo sought to promote the success of the bankruptcy for its benefit and the much greater benefit of Debtor. Thus, even if the Bankruptcy court's dismissal of the First Bankruptcy had not negated its earlier acceptance, equity would still counsel against the application of judicial estoppel.

## IV.  CONCLUSION

Because the District Court abused its discretion in finding that Wells Fargo adopted inconsistent positions in Debtor's bankruptcy proceedings and that the Bankruptcy Court's acceptance of Wells Fargo's claims in the First Bankruptcy was not negated by Debtor's dismissal without a discharge, the application of judicial estoppel is not warranted here. For this reason, we REVERSE the decision of the District Court and REMAND for proceedings consistent with this opinion.