# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 15, 2013

Lyle W. Cayce
Clerk

No. 12-50153

CIBOLO WASTE, INCORPORATED; C-6 DISPOSAL SYSTEMS, INCORPORATED; AMERICAN DISPOSAL COMPANY; ANACONDA DISPOSAL, L.L.C.; APACHE DISPOSAL, INCORPORATED; ABSOLUTE WASTE; GRANDE DISPOSAL COMPANY; FELIX MALDONADO TRUCKING, INCORPORATED; PRO STAR ROLL OFF DUMPSTERS; OTIS SPENCER, doing business as River City Disposal; RIVER CITY WASTE, INCORPORATED; SOUTHTEXAS REFUSE, INCORPORATED; TEXAS WASTE SYSTEMS, INCORPORATED; BRENDA MALDONADO TRUCKING; CLARK CONTRACTING SERVICES, INCORPORATED; DRC MATERIALS; TIGER SANITATION, INCORPORATED,

Plaintiffs-Appellants

v.

CITY OF SAN ANTONIO,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, DAVIS, and CLEMENT, Circuit Judges.
EDITH BROWN CLEMENT, Circuit Judge:

Appellants Cibolo Waste et al. are waste haulers that operate throughout the City of San Antonio and its surrounding counties. In 2006, the City of San Antonio passed an ordinance imposing a permit fee for the collection or disposal of waste within city limits. In response, Appellants filed suit against the City,

No. 12-50153

claiming that the permit fee violates the dormant Commerce Clause by imposing an excessive burden on interstate waste haulers. The district court dismissed their claims and they appealed. As Appellants have failed to show that their alleged injuries fall within the zone of interests protected by the dormant Commerce Clause, we decline to address Appellants' arguments because they lack prudential standing, and we AFFIRM the district court's dismissal of their claims.

## FACTS AND PROCEEDINGS

Appellee City of San Antonio (the "City"), by and through its Solid Waste Management Department, oversees the collection and disposal of solid waste within the City's limits. Both the City and private waste hauler companies (collectively "haulers") offer collection and disposal services to residents and commercial businesses. There are three landfills within city limits, one that is a privatized City facility and two that are privately owned. Appellants Cibolo Waste et al. ("Appellants") are thirteen haulers that collect and dispose of waste within the City and its surrounding communities. Appellants are all Texas companies with their principal places of business in Bexar County, Texas. The record does not indicate that Appellants currently do business or seek to do business outside Bexar County.[1]

For over two decades, the City has regulated the waste management industry through the issuance of permits for collecting or disposing of solid waste. In 2006, the City adopted an ordinance that imposes a permit fee of $2,250 for each vehicle weighing over 7,000 pounds that is used to collect or

---

[1] In their complaint and at oral argument, Appellants acknowledged that they only do business in the state of Texas. Additionally, at oral argument, Appellants conceded that they could offer no evidence that they have expanded or seek to expand their business across state lines.

No. 12-50153

dispose of solid waste within the City. The permit fee is neither tied to the volume of solid waste collected or disposed of by each hauler, nor based on the number of times that a hauler uses a City landfill. Haulers that collect or dispose of solid waste within the City are thus required to pay an annual flat fee, regardless of whether they use a City landfill one time or one thousand times that year. Under the ordinance, haulers that fail to acquire a permit before collecting or disposing of waste are subject to financial penalties. Additionally, the ordinance applies only to haulers that collect or dispose of waste within the City's corporate limits, not those that collect or dispose of waste in other contiguous counties.

The permit fee is designed to cover the costs directly associated with the monitoring of permit holders as well as the costs associated with the City's regulation of the waste management industry. Such costs include, but are not limited to, environmental cleanup, code enforcement, infrastructure maintenance, police and fire services, staffing, and overhead. Moreover, in order to enforce the ordinance, the City must undertake a number of tasks, such as providing and evaluating insurance paperwork that haulers are required to submit with each permit application and assigning city officials to check haulers' permits at dump sites and to conduct vehicle inspections.

According to Rose Ryan, Assistant Director of the City's Solid Waste Department, at the time of its passage, the ordinance was expected to generate between $900,000 and $1.2 million in permit fee payments per year. While Ryan was not able to identify the precise amount of money that the City needs to enforce the ordinance, she noted that the overall cost of regulating the waste management industry is approximately $3 million per year. The $3 million estimate includes the costs of regulation and of providing other waste management services to the City's residents.

3

No. 12-50153

Appellants filed suit in Texas state court, claiming that the permit fee violates the dormant Commerce Clause and the Equal Protection Clause and constitutes an illegal occupation tax.[2]  The City removed the case to federal court.  Appellants then filed an application for a preliminary injunction, which the district court denied.  The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of the City, concluding that the ordinance does not interfere with interstate commerce. Appellants filed a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment, and, upon its denial by the district court, Appellants timely appeal.

## STANDARD OF REVIEW

We review *de novo* a grant or denial of summary judgment, applying the same standards as the district court.  *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).  Viewing all evidence in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), we will affirm a grant of summary judgment only if the evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, FED. R. CIV. P. 56(a).

## ANALYSIS

Every party that comes before a federal court must establish that it has standing to pursue its claims.  The doctrine of standing asks "whether the

---

[2] In their response to the City's motion for summary judgment, Appellants abandoned their equal protection claim.  Although they raise this claim again in their appellate brief, it is waived. *See Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 183 (5th Cir. 1996) ("We refuse to review an argument that a party has failed to raise in response to a summary judgment motion.").

litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The Supreme Court has described standing as "contain[ing] two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Id.* (citations and internal quotation marks omitted). Because Article III standing is a threshold issue, we must address it before considering questions of prudential standing. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002).

Article III standing requires a plaintiff to show: "(1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001) (citations omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). The City contends that Appellants lack Article III standing because they do not allege an injury that would be remedied by declaring the ordinance unconstitutional.

Under our precedent, however, it appears that Appellants have made their showing of injury in fact because the permit fee increases their cost of doing business. In *National Solid Waste Management Ass'n v. Pine Belt Regional Solid Waste Management Authority*, the waste hauler plaintiffs were injured by an ordinance imposing a "tipping" fee for using the city's landfill that ultimately resulted in higher operating costs to haulers. 389 F.3d 491, 498 (5th Cir. 2004) ("[P]laintiffs' cost to dispose of waste [under the ordinance], including the tipping fee and the transportation cost, would be higher than their current cost.").

No. 12-50153

Similarly, Appellants have incurred higher operating costs as a result of the City's ordinance, which imposes an increased cost per vehicle for obtaining a permit to collect and dispose of waste in San Antonio.[3]  This injury to Appellants—in the form of higher operating costs— is directly traceable to the City's ordinance, *see id.*, and would be remedied, even if only temporarily, by a holding that the ordinance is unconstitutional.  The requirements for Article III standing are thereby satisfied.

Even if a plaintiff establishes Article III standing, we may consider whether prudential standing principles nonetheless counsel against hearing the plaintiff's claims.[4]  *See Knutson*, 699 F.2d at 236.  The doctrine of prudential standing embodies "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove*, 542 U.S. at 11.  Moreover, as the Supreme Court has observed, prudential standing:

> [E]ncompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a

---

[3]  While the City has attempted to regulate the waste hauler industry through a permitting process since the early 1990s, the City acknowledged that the permit requirement was not enforced until the passage of this ordinance in 2006.  Because Appellants were not *de facto* required to obtain permits prior to 2006, the passage of the ordinance and its corresponding increased enforcement procedures have raised the price of doing business for haulers in the City.

[4]  Although the City raises the issue of prudential standing for the first time on appeal, we retain discretion to consider its arguments because prudential standing, while not jurisdictional, nonetheless affects justiciability.  *See Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) ("[T]he constitutional limitation requiring an injury to satisfy the case or controversy requisite goes to the court's jurisdictional *power* to hear the case, while the prudential limitation goes to the court's administrative *discretion* to hear the case.").  Thus, we are not required to address a party's prudential standing arguments when they were not raised below, *see Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) (refusing to consider prudential standing where the defendant failed to object in the trial court); *Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417–18 (5th Cir. 2012) (same), but have previously exercised our discretion to do so, *see, e.g.*, *Pine Belt*, 389 F.3d at 498–501.

No. 12-50153

> plaintiff's complaint fall within the zone of interests protected
> by the law invoked."

*Id.* at 12 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

At issue here is whether Appellants' claims fall within the "zone of interests" protected by the dormant Commerce Clause. *See Wyoming v. Oklahoma*, 502 U.S. 437, 469 (1992) (noting that the zone-of-interests test "governs claims . . . under the negative Commerce Clause"); *see also Pine Belt*, 389 F.3d at 499 ("The key inquiry for prudential standing in this case is whether the injury of which plaintiffs complain is 'arguably within the zone of interests to be protected' by the dormant Commerce Clause, the 'constitutional guarantee in question' here.") (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).  Since the dormant Commerce Clause "is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors," *Dep't of Revenue v. Davis*, 553 U.S. 328, 337–38 (2008) (citation and internal quotation marks omitted), an evaluation of the ordinance's allegedly protectionist features is critical to our consideration of Appellants' dormant Commerce Clause argument.

As such, we look to see if a claim under the dormant Commerce Clause falls within the zone of interests by asking: (1) whether Appellants "have standing to challenge the [ordinance] as facially discriminatory against out-of-state economic interests," or (2) whether Appellants "can merely challenge the ordinance[] as being excessively burdensome to interstate commerce." *Pine Belt*, 389 F.3d at 499.  In other words, this test requires us to "ask whether the ordinance[] 'reflect[s] a discriminatory purpose or merely a discriminatory effect.'" *Id.* at 497 (quoting *Dickerson v. Bailey*, 336 F.3d 388, 396 (5th Cir. 2003)).  The test is disjunctive, allowing Appellants to show either that the

ordinance discriminates against out-of-state interests on its face or that the ordinance as applied unduly burdens their out-of-state interests.

The ordinance at issue does not facially discriminate against out-of-state economic interests. A facially discriminatory ordinance is one that by its terms authorizes "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)); *see, e.g., Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 750 (5th Cir. 2006) ("Th[e] discrimination appears on the face of the statute: the Catfish Statute treats domestic catfish differently from foreign catfish to the benefit of the former and the detriment of the latter."). Here, however, the ordinance is applicable to *any* commercial or industrial hauler, regardless of where the hauler originated or planned to end its trip.[5] It is a type of blanket prohibition that favors neither interstate nor intrastate commerce. *See, e.g., Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 336 (5th Cir. 2007); *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 726 (5th Cir. 2004). Accordingly, Appellants lack standing to challenge the ordinance on the basis that it is facially discriminatory against out-of-state interests. *See Pine Belt*, 389 F.3d at 500.

Appellants also cannot satisfy the second prong of the zone-of-interests test since they have not shown that the ordinance imposes an excessive burden on interstate commerce. *See id.* ("An allegation that the plaintiff is involved in interstate commerce and that the *plaintiff's* interstate commerce is burdened by

---

[5] Under the ordinance:

> Any commercial and/or industrial hauler collecting, transporting or disposing of solid wastes, regardless of characterization, within the corporate limits of the City of San Antonio shall be required to permit each vehicle used for transporting or hauling solid waste materials upon public streets, public alleys or highways within the corporate limits of the City of San Antonio.

SAN ANTONIO CITY CODE, Ch. 14, § 14-22(e)(16).

the ordinance in question is sufficient to satisfy the zone of interests test with respect to ordinances that assertedly impose an excessive burden on interstate commerce."). The critical inquiry is whether *Appellants* are engaged in interstate commerce and, if so, whether *their* interstate commerce is burdened by the ordinance. *See id.* at 500–01.

By their own admission, Appellants are not engaged in interstate commerce. Their business is purely intrastate, and they have no contracts that are negotiated on a national or interstate basis. *Cf. id.* at 501 (noting that the plaintiff had contracts that were negotiated on a national or interstate basis). Additionally, Appellants' participation in intrastate commerce throughout Texas does not suffice to place them within the zone of interests protected by the dormant Commerce Clause. *See id.* at 500 n.16 (observing that the purpose of the dormant Commerce Clause is to "protect against *local economic protectionism at the expense of out-of-state interests* . . . not to protect *any economic* interests"). The dormant Commerce clause protects interstate, not inter-city commerce. That Appellants' alleged injury would be remedied by a repeal of the law is similarly inapposite in this zone-of-interests analysis. *See id.* ("The fact that an injury would be remedied if the ordinance was struck down does not mean that the grievance falls within the zone of interests to be protected by the dormant Commerce Clause, particularly when there was no allegation of *any interstate* burden."). As we have emphasized previously, the only parties that have standing to bring a dormant Commerce Clause challenge are those who both engage in interstate commerce and can show that the ordinance at issue has adversely affected their commerce. Appellants fail entirely to satisfy these prerequisites, and as a result, they lack standing to bring their claims in federal court.[6]

---

[6] Further, to the extent that Appellants raise an independent challenge under the Texas Constitution that the ordinance imposes an illegal occupation tax, we affirm the district

No. 12-50153

## CONCLUSION

As the City's ordinance does not facially discriminate against out-of-state commerce or place excessive burdens on Appellants' interstate commerce, Appellants have failed to demonstrate that their alleged injury falls within the zone of interests protected by the dormant Commerce Clause. We AFFIRM the district court's dismissal of this case and hold that Appellants lack standing to pursue their claims.

---

court's summary judgment in favor of the City on this claim as well.