# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2015

Lyle W. Cayce
Clerk

No. 13-10711

BOARD OF TRUSTEES OF THE PLUMBERS AND PIPEFITTERS
NATIONAL PENSION FUND,

      Plaintiff - Appellee

v.

PATRICIA ANN FRALICK,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No.  3:11-CV-3386

Before JOLLY and JONES, Circuit Judges, and GODBEY*, District Judge.

PER CURIAM:**

      In this declaratory judgment action relating to pension rights, Patricia Ann Fralick ("Mrs. Fralick") appeals the district court's declaratory judgment in favor of the Board of Trustees of the Plumbers and Pipefitters National Pension Fund (the "Board") and the dismissal of her counterclaim for benefits

---

\* District Judge of the Northern District of Texas, sitting by designation.

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10711

under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) ("ERISA"). Mrs. Fralick argues that the district court lacked subject matter jurisdiction over the Board's claim. Alternatively, she argues that she is entitled to relief under her counterclaim for benefits.

We conclude that we have subject matter jurisdiction and that Mrs. Fralick's counterclaim for benefits lacks merit. Accordingly, we AFFIRM in part, VACATE in part, and REMAND the case for entry of an amended judgment awarding Mrs. Fralick the remaining payment of $36,722 due under Mr. Fralick's retirement pension.

I.

This appeal is the second occasion in which we have addressed the Fralicks' rights under the Plumbers and Pipefitters National Pension Fund (the "Fund"), a pension plan governed by ERISA. The facts underlying the first case are also specifically relevant to this appeal.

Fred Fulton Fralick ("Mr. Fralick"), Mrs. Fralick's husband, applied for benefits from the Fund in October 2005. At the time of his application, Mr. Fralick worked for Brandt Engineering, and he had accumulated 38.883 years of credit toward his pension. The Board informed Mr. Fralick on October 26, 2005, that he would be awarded an early retirement pension with an effective date of benefits of January 1, 2006. The Board's letter also informed Mr. Fralick that such pensions were automatically paid as a 50% Husband and Wife Pension unless both Mr. Fralick and Mrs. Fralick agreed to reject this structure. On December 2, 2005, Mr. and Mrs. Fralick signed a form rejecting the 50% Husband and Wife Pension and electing instead to receive a Single Life Pension with 5-Years Certain Payments. Under the plan the Fralicks selected, Mr. Fralick was entitled to benefits for the course of his life, and Mrs.

2

No. 13-10711

Fralick would be entitled to additional benefits only to the extent that Mr. Fralick died before receiving sixty total monthly payments.[1]

On December 2, 2005, Mr. Fralick signed a declaration representing to the Board that he would not work in the plumbing and pipefitting industry after December 30, 2005. This representation is important, as the Fund's terms require suspension of benefits if a beneficiary engages in "Disqualifying Employment," which includes employment with any employer that contributes to the Fund or any other employment either related to the plumbing and pipefitting industry or the plumbing and pipefitting union.

After Mr. Fralick completed the application process, he received twelve monthly benefit payments in 2006. Apparently, Mr. Fralick began working for Brandt Electric, a sister company to Brandt Engineering, soon after he supposedly retired from Brandt Engineering. In late 2006, the Board received word that Mr. Fralick was working for Brandt Engineering. Thus, the Board suspended his benefits because it believed that Mr. Fralick was working for a contributing employer to the Fund, and it also sought return of the payments it had made. Mr. Fralick appealed these decisions, contending that Brandt Electric and Brandt Engineering were separate companies and that he had not engaged in plumbing and pipefitting work.

The Board did not accept Mr. Fralick's arguments, and he subsequently filed suit. In that suit, on June 22, 2010, the district court granted Mr. Fralick's motion for summary judgment and rejected the Board's arguments that Mr. Fralick had engaged in disqualifying employment. The Board promptly appealed. Mr. Fralick died on November 12, 2010, while that case was on appeal but after the briefing had been completed. Mr. Fralick's

---

[1] Apparently, the upside of this plan is that it allowed Mr. Fralick to receive larger monthly payments.

3

No. 13-10711

attorneys substituted Mrs. Fralick as executrix of the estate, and this Court affirmed the district court's ruling in March 2011. Although Mrs. Fralick initially refused to accept the Board's payment in satisfaction of the judgment, she ultimately filed a satisfaction of judgment on June 26, 2011.

On July 7, 2011, Mrs. Fralick's attorneys sought payment of a preretirement spouse pension from the Fund.[2] A surviving spouse is entitled to a preretirement pension if the "Qualified Spouse dies before his Effective Date of Benefits, and if at the time of his death the Participant was Vested or otherwise could have established entitlement to a pension." In order to seek this pension, Mrs. Fralick argued that Mr. Fralick had *not* retired from plumbing and pipefitting work. Based upon the earlier decision of this Court, *supra*, the Board took the position in Mrs. Fralick's case that she was not entitled to a preretirement surviving spouse pension because the courts had already determined that Mr. Fralick was entitled to the early retirement pension.

The Board initiated this declaratory judgment action on December 7, 2011, seeking a declaration that Mrs. Fralick was not entitled to a preretirement surviving spouse pension benefit; it also sought an order that it only owed Mrs. Fralick an additional payment of $36,722 based on the remaining payments due under Mr. Fralick's retirement pension. Mrs. Fralick answered the complaint, and on August 21, 2012, she amended her answer to include a counterclaim for benefits. On October 19, 2012, the Board moved for summary judgment, both with respect to its declaratory judgment action and Mrs. Fralick's counterclaim. On October 31, 2012, Mrs. Fralick moved for

---

[2] The record indicates that Mrs. Fralick submitted documentation seeking a preretirement surviving spouse pension in January 2011. The Board had also taken the position that the resolution of the appeal would determine the type of pension that Mrs. Fralick would receive.

4

No. 13-10711

dismissal based on lack of subject matter jurisdiction. She never filed any other responsive brief to the summary judgment motion. The district court ruled in favor of the Board, granting its declaratory judgment and dismissing Mrs. Fralick's counterclaim. It subsequently denied Mrs. Fralick's motion for reconsideration, and she filed a timely appeal of the district court's rulings.

## II.

We review issues of subject matter jurisdiction, including justiciability issues such as standing, de novo. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006). Mrs. Fralick argues that the district court lacked subject matter jurisdiction or, alternatively, that the Board lacked standing to bring this declaratory judgment action. We cannot agree.

## A.

The Board seeks relief under the Declaratory Judgment Act, which permits the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Thus, the Board invoked a federal remedy that is available to it in federal court. But, of course, the Board must also present to the Court "a case of actual controversy within its jurisdiction." *Id.*

The subject matter of the Board's declaratory judgment claim is a pension fund governed by ERISA. Thus, the Board invokes the federal question jurisdiction of the federal courts. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Board's declaratory judgment action "arises" under federal law because its right to relief, if any, depends on our construction of ERISA, a federal statute. Indeed, the Board asserts no right that is separate and distinct from its rights under the statutory scheme of ERISA. It urges us to interpret 29 U.S.C. § 1132(a), which enumerates the bases for civil actions under ERISA, and conclude that it has

5

stated an actionable claim under ERISA. The Board only seeks to enforce its rights outside the statutory scheme by resorting to the Declaratory Judgment Act as an enforcement mechanism.

Mrs. Fralick argues, however, that the district court lacked subject matter jurisdiction because the Board's ERISA claim falls outside the remedies provided to it in § 1132(a). She argues that the Board, an ERISA fiduciary, has brought a claim for benefits, and only a beneficiary may make such a claim under § 1132(a)(1)(B). This argument, however, does not bear on whether we have subject matter jurisdiction over the Board's claim. *See ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013) (en banc). We conclude that the district court correctly held that it had subject matter jurisdiction to adjudicate this declaratory judgment claim under its federal question power in 28 U.S.C. § 1331.

B.

Next, we turn to the question of whether the Board has standing to assert its claim in this federal court action. Standing derives from the constitutional premise that federal courts may only adjudicate "Cases" or "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992). We typically break standing into constitutional and prudential components. Relevant here, a party satisfies the constitutional elements of standing by "present[ing] (1) an actual or imminent injury that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judgment in [his or her] favor." *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 517 (5th Cir. 2014). Mrs. Fralick argues that the Board lacked constitutional standing to bring its action.[3]

---

[3] The district court read Mrs. Fralick's arguments to implicate prudential standing. Prudential standing relates to a litigant's ability to raise *personal* legal rights that affect his interests. *See Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013).

No. 13-10711

Her standing argument is also premised on her contention that the Board has not stated a claim for relief within the enumerated causes of action under § 1132(a). She has not explained, however, how the failure to state a claim implicates *any* of the elements of standing as relates to this case.

To the contrary, the record suggests that the Board seeks resolution of an ongoing controversy over ERISA benefits, and if the courts adopt the Board's interpretation of the pension plan, it will not be liable to Mrs. Fralick. The Board also does not lack standing to pursue this action merely because it filed the action before Mrs. Fralick counterclaimed for benefits. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391–92 (5th Cir. 2003) ("Declaratory judgments are often 'anticipatory,' appropriately filed when there is an actual controversy that has resulted in or created a likelihood of litigation."). The Board presents a long-standing actual controversy between the parties that is capable of judicial resolution, and thus it has standing to bring its declaratory judgment claim in federal court.

Mrs. Fralick points us to an Eleventh Circuit decision, which she claims supports her view that § 1132(a) relates to the elements of standing. *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987). In *Gulf Life*, the Eleventh Circuit described § 1132 as "essentially a standing provision: it sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue." *Id.* at 1524. We emphasize the Eleventh Circuit's use of the word "essentially." It does not appear to us that the *Gulf Life* court actually concluded that § 1132(a) establishes standing elements. In any event the decision does not bind us on the issue of standing.

---

Mrs. Fralick argues on appeal, however, that her arguments implicate constitutional and not prudential standing. Moreover, we do not believe that Mrs. Fralick has raised any issue regarding the prudential elements of standing.

No. 13-10711

In sum, we conclude that the district court correctly held that it had subject matter jurisdiction over the Board's declaratory judgment claim and that the Board had standing to bring the claim.

III.

Next, we turn to the merits of the Board's declaratory judgment action and Mrs. Fralick's counterclaim for benefits. The district court disposed of both claims on summary judgment, and thus we review its decision de novo. *Munn v. City of Ocean Springs, Miss.*, 763 F.3d 437, 438 (5th Cir. 2014).

Before turning to the merits, we observe that the same claims are presented to the Court in two ways. First, the Board filed its action for a declaratory judgment that Mrs. Fralick was not entitled to additional ERISA benefits. Second, Mrs. Fralick filed a counterclaim to the Board's declaratory judgment action seeking ERISA benefits. Because we may decide Mrs. Fralick's claims on her counterclaim for benefits, we need not decide whether the Board could bring its declaratory judgment action under ERISA.[4]

Both parties acknowledge that Mrs. Fralick may bring a counterclaim for benefits under § 1132(a)(1)(B) of ERISA, but the Board disputes whether she is actually entitled to such benefits. The district court considered Mrs. Fralick's counterclaim and the Board's declaratory judgment claim to be virtually identical, as it noted that Mrs. Fralick's counterclaim would still have

---

[4] We question whether the Board, as an ERISA fiduciary, can bring a declaratory judgment action against an ERISA beneficiary relating to benefits. *See, e.g., Newpage Wisconsin Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union*, 651 F.3d 775, 777 (7th Cir. 2011) (explaining that "[w]hether a claim is good differs from the question whether a district court possesses jurisdiction, a matter of adjudicatory competence"). Because this is a difficult question, we decline to decide it, in part because Mrs. Fralick did not plainly raise it on appeal. Instead, she couched her argument in terms of subject matter jurisdiction and standing, which we have rejected. Thus, we decide the merits of the appeal based on Mrs. Fralick's counterclaim for benefits, and we VACATE the district court's decision insofar as it was premised on the Board's declaratory judgment.

8

No. 13-10711

been dismissed even *if* the Board had lacked authority to bring its action. We agree with the district court and AFFIRM its dismissal of Mrs. Fralick's counterclaim.

A.

First, the district court concluded that Mrs. Fralick was judicially estopped from challenging the earlier decision in Mr. Fralick's case. We review the district court's decision for abuse of discretion. *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012). Typically, a reviewing court will consider whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position that is 'plainly inconsistent' with a position asserted in a prior case; (2) the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled; and, (3) the party to be estopped has not acted inadvertently." *Id.* We recognize that judicial estoppel is an equitable doctrine that may be "invoked where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (internal quotation marks omitted). As it is an equitable doctrine, it "is not governed by inflexible prerequisites or an exhaustive formula for determining [its] applicability." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (internal quotation marks omitted, alteration in the original).

Mrs. Fralick admits that the third prong of this test applies here, but she argues that neither of the first two prongs can be applied to her claim because she was not a party to that original action, which addressed Mr. Fralick's claim for benefits. She argues that Mr. Fralick brought and pursued the first action, not she, and even once she stepped into that case she served in a representative capacity only. We cannot agree. It is true that Mrs. Fralick was substituted in Mr. Fralick's place in his action after briefs were filed in this Court, but she

9

allowed the case to proceed to a judgment several months after Mr. Fralick died without disavowing any of these arguments. During that time, she received word from the Fund that the outcome of the first case would establish whether she was entitled to Mr. Fralick's retirement benefits or the preretirement surviving spouse pension. Additionally, her pension rights were plainly intertwined with Mr. Fralick's action because *both* Mr. Fralick and she had signed the form selecting the Single Life Pension. Indeed, Mrs. Fralick filed the satisfaction of judgment in the first action, and her counsel collected attorneys' fees. It was no abuse of discretion to apply the equitable principle of judicial estoppel to her action in the instant case.

## B.

Finally, we address whether the district court abused its discretion when it held that Mrs. Fralick was not entitled to a preretirement surviving spouse pension. *See Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998) ("When an ERISA plan vests its administrator or fiduciary with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, or both, our standard of review is abuse of discretion.").[5] Under the abuse of discretion standard, the Court's first inquiry is whether the Board's decision was legally correct. *See LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013) (explaining that the "legally correct" standard consists of three elements: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan" (internal quotation marks omitted)). The district

---

[5] Mrs. Fralick concedes in her brief that abuse of discretion is the appropriate standard of review.

No. 13-10711

court carefully interpreted the terms of the Fund's plan in its opinion, and we find no error.

A surviving spouse like Mrs. Fralick is entitled to a preretirement surviving spouse pension if the spouse dies "before his Effective Date of Benefits." When Mrs. Fralick filed a satisfaction of judgment in the first action, she accepted benefits under Mr. Fralick's *retirement* pension, which had an effective date of benefits of January 1, 2006, prior to his death. Thus, in addition to its holding that Mrs. Fralick was estopped from arguing that Mr. Fralick had not "retired," the district court also concluded correctly that Mr. Fralick's retirement benefits began on January 1, 2006. Therefore, Mrs. Fralick was disqualified from preretirement surviving spouse benefits because Mr. Fralick did *not* die before his Effective Date of Benefits.[6]

## IV.

In sum, we conclude that the district court had subject matter jurisdiction over both claims in this action and that the Board had standing to bring its declaratory judgment action.[7] Additionally, we hold that Mrs. Fralick's claim for ERISA benefits lacks merit except to the extent that she was entitled to an additional payment of $36,722. Accordingly we AFFIRM the district court's judgment on Mrs. Fralick's counterclaim, VACATE its judgment with respect to the Board's declaratory judgment action, and

---

[6] We do call to the district court's attention that both the Board's declaratory judgment pleading and Mrs. Fralick's prayer for relief in her counterclaim assert that she is due payment of $36,722 in additional benefits under Mr. Fralick's retirement pension. The district court also concluded that Mrs. Fralick was entitled to this payment as part of the Board's declaratory judgment. On remand, the district court should amend its judgment to reflect that Mrs. Fralick is entitled to $36,722.

[7] Mrs. Fralick raises a number of additional arguments regarding discovery issues and a request that any remand be made to the district judge who handled Mr. Fralick's case instead of the judge responsible for this case. Having reviewed the briefs and the record, we find no merit to any of these additional arguments.

No. 13-10711

REMAND the case for entry of an amended judgment awarding Mrs. Fralick the remaining payment of $36,722 due under Mr. Fralick's retirement pension.

AFFIRMED in part, VACATED in part, and REMANDED.