# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00455-COA

**QUINTON STRONG**                                     **APPELLANT**

**v.**

**ACARA SOLUTIONS, INC.**                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2024 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYNETRA LASHELL GUSTAVIS |
| | ROGEN K. CHHABRA |
| | SAVANNAH F. HERRINGTON |
| ATTORNEYS FOR APPELLEE: | WILTON V. BYARS III |
| | TAMARA V. McGEE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 05/20/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Quinton Strong filed for bankruptcy. Strong listed a pending workers' compensation claim in his bankruptcy filings, but he did not disclose a related (potential) personal injury claim. Strong's bankruptcy was dismissed without a discharge. Over a year later, Strong filed that personal injury claim against Acara Solutions Inc. Acara moved for summary judgment, asserting that Strong was judicially estopped from pursuing his personal injury claim against it because he failed to disclose that claim in his previous bankruptcy proceedings.

¶2. The trial court agreed, finding that all three elements of judicial estoppel were met,

namely: "(1) the position [Strong has taken in the current lawsuit] is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) [Strong] did not inadvertently take the inconsistent positions." *Clark v. Neese*, 131 So. 3d 556, 560 (¶16) (Miss. 2013). Accordingly, the trial court granted summary judgment in Acara's favor and dismissed Strong's lawsuit with prejudice.

¶3. On appeal, this Court reversed the trial court's judgment and remanded the case for the trial court to apply the "clarified" judicial estoppel test announced *Saunders*, "which held that 'instead of strictly applying presumptions, courts better promote the equitable principles of judicial estoppel by applying caution and considering whether the particular circumstances warrant judicial estoppel.'" *Strong v. Acara Sols. Inc.*, 375 So. 3d 1214, 1218-19 (¶31) (Miss. Ct. App. 2023) (quoting *Saunders v. Nat'l Coll. Athletic Ass'n*, 352 So. 3d 618, 625 (¶28) (Miss. 2022)). On remand, the trial court again found that all three elements of judicial estoppel were met and dismissed Strong's lawsuit with prejudice.

¶4. In this appeal, Strong asserts that none of the elements of judicial estoppel were met and that the trial court therefore erred in determining he was judicially estopped from pursuing his personal injury lawsuit against Acara. Upon review, we find that the trial court erred as a matter of law in determining that the second judicial estoppel requirement of "acceptance" was met. Accordingly, we reverse the trial court's summary judgment in Acara's favor on judicial estoppel grounds and remand this case for trial proceedings.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶5. Strong was employed at Siemens Industry as a warehouse operator. On May 29, 2018,

2

Strong was injured at work when a forklift operator allegedly pinned Strong against some pallets with the forklift she was operating. On January 2, 2019, Strong filed a claim with the Mississippi Workers' Compensation Commission against Siemens for the injuries he claimed to have suffered from the 2018 accident. The lawyers representing Strong in his workers' compensation claim (and later in his personal injury lawsuit) are also his appellate counsel. For ease of reference, we will refer to these lawyers as Strong's "current counsel."

¶6.     Using a different lawyer and a different law firm, Strong filed for Chapter 13 bankruptcy the same day, on January 2, 2019. At that time, Strong did not know the identity of the forklift operator. In connection with his bankruptcy filing, Strong prepared a schedule of his assets on January 22, 2019. One category on this form required Strong to disclose "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment. Examples: Accident, employment disputes, insurance claims, or rights to sue." Strong marked, "No," indicating that he did not have any claims against third parties. Strong disclosed his pending workers' compensation claim under the next category, which required him to list "[o]ther contingent and unliquidated claims of every nature." In particular, Strong marked, "Yes," and disclosed he had a "[p]ending Worker's Comp claim for work[-]related injury against employer and employers worker's comp insurance carrier."

¶7.     After all of Strong's bankruptcy schedules were filed, the bankruptcy trustee conducted the meeting of creditors in the bankruptcy action on February 26, 2019. During the meeting, Strong was asked the following:

> Trustee:     Okay, Mr. Strong did you review and sign your bankruptcy petitions, schedules, and statements before they were filed with

3

the court?

Strong: Yes.

Trustee: Okay, and were you personally familiar with the information in those documents?

Strong: Yes.

Trustee: And was the information that you gave [your bankruptcy lawyer] prepared as documents true and correct?

Strong: Yes.

Trustee: To the best of your knowledge?

Strong: Yes. . . .

Trustee: Did you list all of your assets and all of your creditors?

Strong: Yes, except I think I forgot one.

Trustee: Who did you forget? . . .

Strong: Continental Financial. . . .

Trustee: Are you currently involved in any type of lawsuit or class action?

Strong: Uh, worker's comp, but I mean . . . .

Trustee: Okay. Other than that, anything else?

Strong: No, uh, no.

Trustee: Is that purely just [a] worker's comp claim?

Strong: Yes, just worker's comp claim.

Strong's bankruptcy attorney filed an amended Chapter 13 plan on April 8, 2019.

¶8. About two weeks later, on April 25, 2019, Strong's current counsel notified his

4

bankruptcy attorney of Strong's "ongoing workers' compensation case and potential 3rd party case." Strong's current counsel "also provided [Strong's bankruptcy attorney] with copies of Mr. Strong's workers' compensation case and personal injury contracts." Strong's bankruptcy attorney never updated the bankruptcy schedule to include the potential personal injury claim.

¶9. According to the bankruptcy docket for Strong's bankruptcy petition, the bankruptcy court confirmed Strong's bankruptcy plan on May 14, 2019.[1]

¶10. On December 16, 2019, the bankruptcy trustee filed a motion to dismiss the bankruptcy case for Strong's "[f]ailure to make [p]lan payments" under his Chapter 13 plan. On March 4, 2020, the bankruptcy court entered an agreed order granting the trustee's motion. Strong's bankruptcy case was closed on May 7, 2020.

¶11. In the meantime, in the course of Strong's workers' compensation case, Strong's current counsel learned through Siemens's September 2019[2] discovery responses that the forklift operator was Shaniqua Martin and that Superior Staffing Services Inc. was her employer at the time of the accident.

¶12. On May 26, 2021, Strong filed his initial complaint against Superior Staffing and Martin (the forklift operator), among others, seeking damages for the injuries he allegedly suffered in the workplace accident in 2018. Strong amended that complaint to correct the date of the accident. On July 1, 2021, Strong's current counsel learned, through Siemens's

---

[1] The bankruptcy court's "Order Confirming Chapter 13 Plan" is not in the record.

[2] Strong's appellant's brief provides that these responses were served on "September 23, 2019," but the excerpt of these discovery responses in the record is not dated.

5

response to a subpoena duces tecum, that Superior Staffing had changed its name to Acara Solutions Inc. Strong filed a second amended complaint on the same day, adding Acara as a defendant.

¶13. As noted, Acara moved for summary judgment on July 28, 2022, asserting that Strong was judicially estopped from pursuing his lawsuit against it because he did not disclose this personal injury claim in his bankruptcy filings. After a hearing, the trial court granted Acara's motion. This Court reversed the trial court's judgment granting Acara's motion and remanded the case "for proceedings consistent with *Saunders* and the special concurrence of *Jones* [*v. Alcorn State Univ.*, 337 So. 3d 1062,] 1076 (¶55) (Miss. 2022) (Maxwell, J., specially concurring)." *Strong*, 375 So. 3d at 1219 (¶33).

¶14. On remand, the trial court again granted Acara's motion for summary judgment, finding that Strong's claim was barred by judicial estoppel and dismissing Strong's case with prejudice on March 20, 2024. Strong appeals.

## DISCUSSION

¶15. Acara asserts that Strong should be judicially estopped from pursuing his personal injury lawsuit against it because he did not disclose that potential claim in his bankruptcy filings. The trial court granted summary judgment in Acara's favor on judicial estoppel grounds, finding that all three requirements necessary to impose judicial estoppel were met. For the reasons detailed below, we find that the trial court erred as a matter of law when it determined that the "acceptance" element of judicial estoppel was met. Because our determination on this point is dispositive, we need not discuss the other two judicial estoppel

6

elements and decline to do so.

¶16.    "We review a trial court's grant or denial of a motion for summary judgment de novo. The standard of review when considering a trial court's application of judicial estoppel is abuse of discretion." *Jones*, 337 So. 3d at 1066 (¶10) (citations omitted).  In this case, however, we find that the trial court's determination on the second judicial estoppel "acceptance" element was "an erroneous review of law," and thus our review on this point is de novo. *See Adams v. Graceland Care Ctr. of Oxford LLC*, 208 So. 3d 575, 580 (¶13) (Miss. 2017) (noting that an "abuse of discretion" standard of review applies in reviewing a trial court's application of judicial estoppel "*unless the trial court based its decision on an erroneous review of law*" (emphasis added)); *see generally Thoden v. Hallford*, 391 So. 3d 1137, 1144 (¶21) (Miss. 2024) ("For questions of law, we employ a de novo standard of review and will only reverse for an erroneous interpretation or application of the law.").

¶17.    As noted, "[a] party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Clark*, 131 So. 3d at 560 (¶16).  "The purpose of judicial estoppel is to prevent parties from knowingly taking a position in one court that is contrary to a position that party has asserted in, and that has been *accepted by*, another court." *Id.* at 562 (¶21) (emphasis added).  Further, "judicial estoppel is an equitable doctrine . . . .  And '[e]quity eschews mechanical rules . . . .'" *Saunders*, 352 So. 3d at 625 (¶28) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)).  As such, the doctrine "should be applied flexibly, with an intent

7

to achieve substantial justice." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

¶18. We begin our analysis by briefly summarizing Strong's arguments and the trial court's ruling with respect to the judicial estoppel "acceptance" requirement. As he now asserts on appeal, Strong argued in the trial court that the "acceptance" element was not met because "Strong's bankruptcy case was dismissed over one year before the instant lawsuit was ever filed, *no discharge of his creditors was ever granted*, and any acceptance of . . . Strong's position before the bankruptcy court was vacated by the dismissal [of his bankruptcy petition]," citing *In re Oparaji*, 698 F.3d 231 (5th Cir. 2012), and 11 U.S.C. § 349(b) (2018), among other authorities, in support of this argument.

¶19. The trial court rejected Strong's assertion, determining that it was "inconsistent with Mississippi law." Instead, the trial court found that "when the bankruptcy court confirmed Mr. Strong's Chapter 13 bankruptcy plan, such confirmation reflected the bankruptcy court's acceptance that Mr. Strong had fully and completely disclosed all of his assets, which disclosure did not include the instant claim," citing *Jones*, 337 So. 3d at 1069 (¶22); *Jackson v. Harris*, 303 So. 3d 454, 459 (¶16) (Miss. Ct. App. 2020). On appeal, Acara relies on these cases, and others, for the same proposition, as does the dissent. *See Smith v. Baker*, 321 So. 3d 575, 582-83 (¶21) (Miss. Ct. App. 2021); *see also Jethroe v. Omnova Sols. Inc.*, 412 F.3d 598, 599 (5th Cir. 2005).

¶20. We recognize that the courts in these cases found that the "acceptance" element was met at the time the bankruptcy court confirmed the debtor's bankruptcy schedules and plan, even in some cases where the bankruptcy court later dismissed the bankruptcy case without

discharge. *See Harris*, 303 So. 3d at 459 (¶16) & n.7; *see also Jethroe*, 412 F.3d at 599-600. In *Harris* and *Jethroe*, however, the debtors filed their lawsuits on their undisclosed claims during the pendency of their bankruptcies yet never disclosed those claims in the ongoing bankruptcy proceedings. *Harris*, 303 So. 3d at 459 (¶16); *Jethroe*, 412 F.3d at 599. Only after they had filed their lawsuits were their bankruptcy cases ultimately dismissed. *Harris*, 303 So. 3d at n.7; *Jethroe*, 412 F.3d at 599.

¶21. Certainly the circumstances in *Harris* and *Jethroe* are quite different than the circumstances here, where Strong did not even know the identity of the forklift operator (or that she was not employed by Siemens) when he filed his bankruptcy petition; Strong's current lawyers later informed Strong's bankruptcy lawyer of the possibility of a claim, but the bankruptcy lawyer never amended Strong's schedules or plan; and Strong had no active bankruptcy proceedings when he filed his lawsuit on the undisclosed claim over a year after his bankruptcy was dismissed without discharge.

¶22. But even if the circumstances were analogous, we are still left without guidance because no revocation-of-acceptance-upon-dismissal argument was raised in either *Harris* or *Jethroe*, unlike here. Indeed, we find no Mississippi case in which an appellate court has addressed the effect of a dismissal without discharge on the bankruptcy court's previous "acceptance" of a debtor's bankruptcy schedules and plan. The Mississippi appellate courts simply have not had the opportunity to address the issue we now have before us. As such, we must look elsewhere for guidance.

¶23. The United States Court of Appeals for the Fifth Circuit *has* addressed this issue, and

9

we find its analysis in *Oparaji* both instructive and persuasive. As we discuss below, we find that our decision to reverse the trial court's summary judgment in Acara's favor based upon its erroneous analysis of the judicial estoppel "acceptance" element is supported by the Fifth Circuit's analysis in *Oparaji*, decisions following *Oparaji*, 11 U.S.C. § 349(b) and federal courts' interpretation of this provision, analogous Mississippi cases, and the equitable principles embodied in the judicial estoppel doctrine.

¶24. In *Oparaji*, the debtor sought to invoke the doctrine of judicial estoppel to prohibit a creditor (Wells Fargo) from asserting certain arrearages in the debtor's second bankruptcy. *Oparaji*, 698 F.3d at 234-35. The bankruptcy court had dismissed the debtor's first bankruptcy without discharging the debtor. *Id.* at 234. The Fifth Circuit reversed the district court's affirmance of the bankruptcy court's order granting summary judgment in the debtor's favor on his judicial estoppel claim in the second bankruptcy. *Id.* at 235.

¶25. In relevant part, the Fifth Circuit recognized that although the parties did not dispute that the bankruptcy court initially "accepted" the debtor's bankruptcy "for the purposes of judicial estoppel," that was not "[t]he issue at hand." *Id.* at 237-38. Rather, "[t]he issue at hand . . . turns on whether the court later revoked this acceptance by dismissing the bankruptcy." *Id.* at 238.[3] The Fifth Circuit found that the bankruptcy court did revoke its acceptance, explaining that "the Bankruptcy Court's acceptance of Wells Fargo's claims was revoked when Debtor's bankruptcy was dismissed without a discharge." *Id.*

---

[3] The court recognized that "[s]ince we hold that Wells Fargo did not assert legally inconsistent positions in the proceedings below, we need not even reach this issue," *Oparaji*, 698 F.3d at 238, but went on to address the issue in detail, as we discuss above.

10

¶26.    In reaching this conclusion, the Fifth Circuit relied on federal courts' interpretation of 11 U.S.C. § 349(b). *Id.* Section 349(b) provides in relevant part that "[u]nless the court, for cause, orders otherwise, a dismissal of a case . . . vacates any order, judgment, or transfer ordered . . . and . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."   11 U.S.C. § 349(b)(2)-(3).  As the Fifth Circuit explained:

> Under 11 U.S.C. § 349(b), "the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in *before* the case was initiated." *In re Sanitate*, 415 B.R. 98, 104 (Bankr. E.D. Pa. 2009). Many courts have interpreted this statute to mean that dismissal of a bankruptcy case restores the status quo ante. *Id.* at 105; *see also In re Crump*, 467 B.R. 532, 535 (Bankr. M.D. Ga. 2010). As the *Sanitate* court notes, "[t]hese broad readings are in harmony with Congress' stated intent that the purpose of this section is to 'undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" 415 B.R. at 105 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 48-49, 1978 U.S.C.C.A.N. 5787, 5835 (1978)).[4]

---

[4] Bankruptcy and district courts in the Fifth Circuit have repeatedly recognized this principle.  *See, e.g.*, *Ware v. U.S. Bank Nat. Ass'n*, 131 F. Supp. 3d 573, 576 (S.D. Miss. 2015); *In re Neria*, No. AP 16-03148, 2022 WL 17254478, at *29 n.174 (Bankr. N.D. Tex. Nov. 28, 2022) (stating "the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in before the case was initiated" (quoting *In re Oparaji*, 698 F.3d at 238)); *In re Beal*, No. 22-50000-RLJ13, 2022 WL 2962703, at *3 (Bankr. N.D. Tex. July 26, 2022) ("When a bankruptcy court dismisses a bankruptcy plan without granting a discharge, 'the court's acceptance of that plan [is] negated and the parties [are] no longer bound by its terms.'" (quoting *In re Oparaji*, 698 F.3d at 238)); *In re Parson*, No. 21-30982, 2021 WL 4204801, at *4 (Bankr. N.D. Tex. Sept. 15, 2021) (recognizing that "[d]ismissal of a bankruptcy case restores the status quo ante" (quoting *In re Sanitate*, 415 B.R. at 105)); *In re Orosco*, No. 19-60038-RLJ13, 2020 WL 6054695, at *8 (Bankr. N.D. Tex. Oct. 13, 2020) (recognizing that "the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in before the case was initiated (citations omitted), and "[t]his return to pre-bankruptcy rights enables creditors to resume debt collection and other acts to protect their interests"); *In re Dahlin*, No. 16-36169, 2018 WL 2670501, at *6 (Bankr. S.D. Tex. May 15, 2018); *In re Clark*, No. 17-51130-CAG, 2017 WL 5505135, at *2 (Bankr. W.D. Tex. Nov. 13, 2017); *George v. Fresenius Med. Care N. Am.*, No. CV 15-14-RLB,

*Oparaji*, 698 F.3d at 238; *see In re Lopez*, 897 F.3d 663, 670 (5th Cir. 2018). Because the Fifth Circuit's analysis includes construing federal law, "we give great weight and deference to [this] interpretation[]." *Brown v. Credit Ctr. Inc.*, 444 So. 2d 358, 366 n.4 (Miss. 1983).

¶27. The Fifth Circuit agreed with the creditor's argument that because "the Bankruptcy Court dismissed Debtor's bankruptcy plan without granting a discharge, the court's acceptance of that plan was negated and the parties were no longer bound by its terms." *Oparaji*, 698 F.3d at 238. We find that the Fifth Circuit's analysis is wholly applicable here—namely, that even if the bankruptcy court accepted Strong's previous position when it accepted Strong's bankruptcy schedules and his proposed Chapter 13 plan, this acceptance "was revoked when [Strong's] bankruptcy was dismissed without a discharge." *Id.*

¶28. Acara asserts that *Oparaji* does not apply in Strong's case because it involved the *debtor* seeking to bar a *creditor* from asserting claims inconsistent with claims the creditor previously asserted in the debtor's first bankruptcy.[5] But this is a distinction without a difference because the basic principle delineated by the Fifth Circuit—that a bankruptcy court's acceptance of a debtor's bankruptcy plan is "negated" and "revoked when [a] [d]ebtor's bankruptcy [is] dismissed without a discharge"—applies equally to both debtors and creditors alike. *Id.* ("Under 11 U.S.C. § 349(b), the pre-discharge dismissal of a bankruptcy case returns *the parties* to the positions they were in before the case was initiated." *Id.* (emphasis added) (internal quotation mark omitted)). Indeed, the court

---

2016 WL 3039827, at *3 (M.D. La. May 27, 2016).

[5] The dissent likewise raises this point.

12

specifically recognized that as for a debtor who does not "live up to [his] end of the bargain because of dismissal of [his] case, a resulting finding that [the debtor's] confirmed Chapter 13 plan is terminated serves to prevent a debtor from obtaining the benefit of those terms in a plan which [is] advantageous to the debtor." *Id.*

¶29.   In any event, at least three federal district courts in the Fifth Circuit have refused to apply judicial estoppel based upon *Oparaji* under the *same* circumstances as in this case—i.e., where the *creditor* asserted that the second "acceptance" prong was met based on the bankruptcy court's initial acceptance of the debtor's plan, followed by dismissal, not discharge.

¶30.   In *Ware*, for example, the Wares filed a Chapter 13 bankruptcy petition, but their schedules did not mention any potential claims they may have had against JP Morgan Chase Bank N.A. *Ware*, 131 F. Supp. 3d at 575.  The Wares later asserted claims against Chase for negligently handling their home mortgage loan modification. *Id.*  Chase claimed that the Wares were judicially estopped from pursuing their claims against it because they did not include these potential claims in their bankruptcy schedules. *Id.* at 576.

¶31.   The United States District Court for the Southern District of Mississippi disagreed, beginning its analysis by observing that the bankruptcy court had dismissed the Wares' bankruptcy; thus, "the bankruptcy case was closed without the court confirming the Wares' Chapter 13 plan." *Id.*  Nevertheless, Chase asserted that "the bankruptcy court accepted the Wares' previous position when it 'accepted Plaintiffs['] schedules and their proposed Chapter 13 plan.'" *Id.*  The district court rejected Chase's "acceptance" argument, pointing

13

out that "the Fifth Circuit has held that a bankruptcy court's acceptance of a debtor's schedules and bankruptcy plan is negated when the bankruptcy court later 'dismisse[s] [the] [d]ebtor's bankruptcy plan without granting a discharge.'" *Id.* (quoting *Oparaji*, 698 F.3d at 238). The district court held, "That is precisely what happened in this case, so judicial estoppel does not apply." *Id.*; *see George*, No. CV 15-14-RLB, 2016 WL 3039827, at *3 (determining that the judicial estoppel "acceptance" prong was not met where the plaintiff's bankruptcy proceeding was dismissed without discharge (citing *Oparaji*, 698 F.3d at 237-38)); *Roden v. Synergy Techs. Inc.*, No. CIV.A. 13-6753, 2014 WL 2533718, at *2 (E.D. La. June 4, 2014) (refusing to grant summary judgment on judicial estoppel grounds, determining, in relevant part, "that this record does not establish judicial acceptance, . . . [as] [t]he bankruptcy court may have revoked any acceptance when it dismissed the plaintiff's bankruptcy without a discharge" (citing *Oparaji*, 698 F.3d at 237-38)); *see also In re Okorie*, No. 2:23-CV-104-HSO-BWR, 2024 WL 3566005, at *4 (S.D. Miss. July 19, 2024), *aff'd*, No. 24-60376, 2024 WL 4678453 (5th Cir. Nov. 5, 2024) (recognizing that "'[t]he pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in *before* the case was initiated,' essentially undoing the bankruptcy case and restoring all property rights to their position at the commencement of the case" (quoting *Oparaji*, 698 F.3d at 238).[6]

¶32.    We recognize, as Acara and the dissent point out, the Fifth Circuit has subsequently noted that "[i]n dicta, this court has discussed whether *dismissal* of a bankruptcy without

---

[6] See the cases cited in footnote 4 above, as well.

14

discharge constitutes a revocation of acceptance." *Allen v. C & H Distributors L.L.C.*, 813 F.3d 566, 573 n.5 (5th Cir. 2015) (citing *Oparaji*, 698 F.3d at 238). This observation, itself, is dicta, though, because the *Allen* court went on to observe that the case before it involved a bankruptcy case "closing," not "dismissal," and "in bankruptcy, case closing is a concept distinct from case dismissal[.]" *Id.* The court further noted that "the Allens have failed to raise any revocation of acceptance argument on appeal," so the issue was waived. *Id.* As such, the *Allen* court did not even address the revocation of acceptance issue at all.

¶33.   Further, even if the Fifth Circuit's discussion in *Oparaji* regarding revocation of acceptance is dicta, we find it persuasive, nonetheless. As this Court has explicitly observed, statements made in dicta "show the views entertained by the court at that time, are of persuasive force, and should be followed unless found to be erroneous." *Smith v. Normand Child. Diversified Class Tr.*, 122 So. 3d 1234, 1237 (¶5) (Miss. Ct. App. 2013) (quoting *State v. McDonald*, 164 Miss. 405, 423, 145 So. 508, 512 (1933) (Smith, C.J., concurring)). We find no error in the Fifth Circuit's revocation-of-acceptance discussion in *Oparaji*; instead, we find it instructive and persuasive in this case as we have detailed above.

¶34.   We also find instructive this Court's judicial estoppel analysis in cases where we have declined to apply that doctrine because we found no "acceptance" of a party's position in a prior proceeding. In *Moore v. Mississippi Farm Bureau Casualty Insurance Company*, for example, Larry Moore was involved in an accident with another motorist (Rosie Kellum). *Moore v. Miss. Farm Bureau Cas. Ins. Co.*, 387 So. 3d 1019, 1021 (¶1) (Miss. Ct. App. 2023), *cert. denied*, 387 So. 3d 63 (Miss. 2024). Moore and his wife subsequently sued

15

Kellum and others, claiming Kellum was negligent. *Id.* After the Moores' automobile insurance carrier (Farm Bureau) "determined that the value of the Moores' damages claims did not exceed their policy's liability limits for uninsured motorist (UM) coverage, the Moores amended the lawsuit to add Farm Bureau as a defendant." *Id.* Farm Bureau had filed a separate lawsuit before (in 2018) against Kellum, claiming she was negligent and caused the accident. *Id.* at 1022 (¶5). That lawsuit settled. *Id.* at 1023 (¶8).

¶35. At trial, the Moores asserted "that they were prejudiced by Farm Bureau's taking 'a completely opposite position' as to who was liable for the accident in the separate 2018 lawsuit against Kellum" and "that the doctrine of judicial estoppel should have prevented . . . Farm Bureau from changing its position on liability for the subject accident." *Id.* at 1025-26 (¶21). This Court disagreed, specifically finding that "[b]ecause the prior suit was settled and dismissed with prejudice, we find there was *no acceptance* by the circuit court [in the 2018 lawsuit] that Kellum was liable for the accident." *Id.* at 1026 (¶22) (emphasis added). We cited *He Shao v. University of Mississippi Medical Center*, 272 So. 3d 138, 140 (¶5) (Miss. Ct. App. 2019), in support of this determination, parenthetically noting that there we held "that the trial court was without authority to dismiss [the] second complaint on [the] basis of judicial estoppel [or res judicata], as the prior complaint had been dismissed, and the trial court 'made no final judgment[.]'" *Id.* By analogy, we find that these cases likewise support the principle that upon *dismissal* of Strong's bankruptcy in this case, rather than a final discharge, any acceptance of Strong's position in that proceeding is revoked.

¶36. Additionally, in reaching our decision to reverse the trial court's judgment imposing

16

judicial estoppel in this case, we bear in mind the equitable principles that overlay any judicial estoppel analysis. In the "acceptance" requirement context, we take particular note of the principle that "[w]hen the party asserting the prior inconsistent position has not *benefitted* by the assertion, the doctrine should not be applied." *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 846 (¶25) (Miss. 2016). Acara asserts that the automatic stay in place while Strong's bankruptcy was pending is a sufficient "benefit" to trigger judicial estoppel despite a subsequent bankruptcy dismissal. We are not persuaded by this assertion, and Acara cites no Mississippi authority to support this suggestion.

¶37. Acara's assertion ignores the effect of the pre-discharge dismissal of Strong's bankruptcy case, which "returns the parties to the positions they were in *before* the case was initiated." *Oparaji*, 698 F.3d at 238 (quoting *In re Sanitate*, 415 B.R. at 104 (discussing 11 U.S.C. § 349(b)). As such, after his bankruptcy was dismissed, Strong was liable for his debts just as if he had never filed for bankruptcy, and his creditors were free to pursue collection proceedings. Strong's bankruptcy was dismissed in March 2020. Strong's creditors had over a year to pursue collection efforts against Strong before he even filed his lawsuit against Acara on the undisclosed claim—and they may continue pursuing these efforts to date. Under these circumstances, we find that any "benefit" Strong may have received from the automatic stay back in 2019 is de minimis and certainly not sufficient to warrant imposition of judicial estoppel in this case.

¶38. Indeed, in the three district court cases that have declined to impose judicial estoppel in the Fifth Circuit based on *Oparaji*, no purported benefit of an automatic stay was

17

recognized as a deterrent. In *Ware*, for example, the Wares, like Strong, had obtained an automatic stay in their Chapter 13 bankruptcy prior to its dismissal. *Ware*, 131 F. Supp. 3d at 576. But this stay did not prevent the district court from determining that judicial estoppel did not apply in that case because the bankruptcy court's "acceptance" was "negated" when the bankruptcy court later dismissed the bankruptcy without discharge. *Id.*; *see also George*, 2016 WL 3039827, at *3. And although we find no Mississippi case on point, we find further guidance in *Westbrooks v. Board of Trustees of East Cleveland Public Library*, No. 1:16-CV-1438, 2016 WL 4577715 (N.D. Ohio Sept. 2, 2016). There, the court recognized in general discussion that *some* courts may deem an "automatic stay . . . a sufficient advantage to warrant judicial estoppel" but declined to follow that reasoning, stating, "Although Plaintiff Westbrooks benefitted from an automatic stay in her bankruptcy, Defendant has not shown that Plaintiff gained a particular advantage from the stay." *Id.* at *4. Acara has shown no "particular advantage" that Strong gained from the bankruptcy automatic stay in this case, and, as noted, Strong's creditors have been free to pursue their collection efforts against him since March 2020 when his bankruptcy was dismissed.

**CONCLUSION**

¶39.    For the above-stated reasons, we find that the trial court erred as a matter of law in determining the "acceptance" element of judicial estoppel was met in this case.[7] Accordingly, we reverse the DeSoto County Circuit Court's order granting summary judgment in Acara's favor on judicial estoppel grounds and remand this case for trial

---

[7] As noted, our determination on this point is dispositive. We therefore decline to discuss the other two judicial estoppel elements.

18

proceedings.

¶40.   **REVERSED AND REMANDED.**

   **BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR.  EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J.**

   **EMFINGER, J., DISSENTING:**

¶41.   The trial court granted summary judgment in favor of Acara Solutions Inc., finding that Strong's claims were barred by judicial estoppel. Because I would affirm the judgment of the trial court, I respectfully dissent. Our standard of review in this specific type of case is set out in *Jones v. Alcorn State University*, 337 So. 3d 1062, 1066 (¶¶10-11) (Miss. 2022):

> We review a trial court's grant or denial of a motion for summary judgment de novo. *Copiah Cnty. v. Oliver*, 51 So. 3d 205, 207 (Miss. 2011). The standard of review when considering a trial court's application of judicial estoppel is abuse of discretion. *Adams v. Graceland Care Center of Oxford, LLC,* 208 So. 3d 575, 579 (Miss. 2017); *Jourdan River Ests., LLC v. Favre*, 278 So. 3d 1135, 1153 (Miss. 2019); *Rogers v. Gulfside* [*Casino*] *P'ship*, 206 So. 3d 1274, 1278 (Miss. Ct. App. 2016); *Jackson v. Harris*, 303 So. 3d 454, 457 (Miss. Ct. App. 2020).

> The dissent's disagreement with the standard of review for judicial estoppel's application is inconsistent with our precedent. The proper standard of review for cases of this type has been addressed by this Court previously, **and de novo review _only_ has been rejected.**

(Emphasis added).

¶42.   To get straight to the point, in *Jackson*, 303 So. 3d at 457 (¶9), this Court repeated the three prong test for the applicability of judicial estoppel:

> "A party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Id*. at (¶16) (citing *Kirk* [*v. Pope*], 973 So. 2d

19

[981,] 991 (Miss. 2007))].

I will address each prong separately below.

    (1)     *The position is inconsistent with one previously taken during litigation*.

¶43. By failing to identify the potential third-party claim against Martin and Acara in his bankruptcy plan, Strong, in effect, represented that no such claim existed. *See Jackson*, 303 So. 3d at 458 (¶11); and *Allen v. C & H Dist. L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (omission of claim from bankruptcy filing is a representation that claim did not exist). By filing the complaint herein, seeking damages from Martin and Acara, Strong took an inconsistent position from the position he took in bankruptcy. I agree with the trial court, the first prong of the test was met.

    (2)     *A court accepted the previous position.*

¶44. The majority admits that the bankruptcy court accepted Strong's "previous position" when he failed to disclose the third-party tort claim in his bankruptcy plan and that plan, without the claim, was confirmed by the bankruptcy court. However, the majority takes the position, citing *In re Oparaji*, that the acceptance of this position was "revoked" when the bankruptcy case was dismissed prior to the debtor being discharged. *In re Oparaji*, 698 F. 3d 231 (5th Cir. 2012). According to the majority, this second prong of judicial estoppel is not met; therefore, the trial court's grant of summary judgment must be reversed and the matter remanded.

¶45. While *Oparaji* was decided in 2012, in 2020 this Court reasoned in *Jackson v. Harris*:

> Like Rogers, Jackson had a continuing duty to disclose his claim in his bankruptcy case. (footnote omitted) By not disclosing his claim in the

20

bankruptcy proceeding, Jackson took a position that was inconsistent with one previously taken during his slip-and-fall litigation. Therefore the first requirement of judicial estoppel was met. Additionally, **the second requirement was satisfied because the bankruptcy court adopted and accepted the previous position that he made a full and complete disclosure when the court confirmed his Chapter 13 bankruptcy plan.** [FN6].

Lastly, clearly Jackson had knowledge about his personal injury lawsuit and failed to disclose the claim in his bankruptcy proceeding. Jackson had an open Chapter 13 bankruptcy case since November 19, 2014, and his bankruptcy plan was confirmed on February 23, 2015. He made a claim on December 4, 2017, regarding his slip-and-fall accident, and he filed his personal injury lawsuit on June 18, 2018. Jackson's bankruptcy case was not terminated until November 7, 2018. [FN7] Like Rogers, Jackson was deemed to have had knowledge of his claim because he was aware of the facts giving rise to it. Additionally, we stated in Rogers that we look at the debtor's motive not to disclose his claim. *Id*. at 1280 (¶12). "If the debtor does not disclose [his] claim, [he] can keep the net proceeds of any settlement or judgment rather than pay [his] debts to creditors who are not repaid in full under the terms of her bankruptcy plan." *Id*. Jackson argues that he made a simple mistake in failing to disclose his personal injury claim during the bankruptcy proceeding. But like Rogers, Jackson "presented no evidence that this self-evident motive for concealment is inapplicable in this case." *Id*. Relying on precedent, all three requirements for judicial estoppel have been satisfied. Therefore, the circuit court did not abuse its discretion in dismissing Jackson's action because of judicial estoppel.

> FN 6: Adoption only requires "that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *In re Superior Crewboats Inc*., 374 F. 3d 330, 335 (5th Cir. 2004) (quoting *In re Coastal Plains Inc*., 179 F. 3d 197, 206 (5th Cir. 1999)).

> FN 7: The bankruptcy court dismissed Jackson's case because he had fallen over sixty days behind in his plan payments. **In *Jethroe v. Omnova Sols. Inc.*, 412 F. 3d 598, 600 (5th Cir. 2005), the court held that although Jethroe's bankruptcy case was dismissed for failure to comply with an agreed order, Jethroe was properly judicially estopped for failure to disclose her discrimination lawsuit during her bankruptcy proceedings**. *Id.* at 601.

(Emphasis added). Clearly this Court in 2020 did not believe that dismissal of the

bankruptcy case after the debtor's plan had been confirmed prevented the application of judicial estoppel.

¶46.    This Court, however, is not alone in that belief. In *Smith v. Reyes*, No. 3:22-cv-2816-D, 2023 WL 8261303, at *3 (N.D. Tex. 2023), the court stated:

> Courts have consistently held that a bankruptcy court accepts a debtor's position when it relies on her asset schedules and confirms her bankruptcy plan. This reliance need not be explicit; the court assumes reliance on the debtor's schedules when the bankruptcy court confirms the debtor's plan. . . . This plan confirmation qualifies as acceptance because the bankruptcy court accepted Smith's asset schedules as accurate at the moment of confirmation. *See Jethroe*, 412 F. 3d at 599-600.

The court then dropped this footnote:

> [FN 5]: The Fifth Circuit's opinion in *In re Oparaji*, 698 F.3d 231 (5th Cir. 2012), does not impact the court's analysis of the second element. **In *Oparaji* the panel discussed—but did not decide—the question whether a bankruptcy court revokes its acceptance of a debtor's chapter 13 plan by dismissing the bankruptcy.** *Id.* at 238. The panel acknowledged that a bankruptcy court could "revoke" its acceptance of a debtor's chapter 13 plan on materially distinguishable facts. *See id.* at 234-38. **In *Oparaji* a debtor attempted to apply judicial estoppel to preclude a creditor from pursuing in the debtor's second bankruptcy arrearages that could have been, but were not, claimed in the debtor's first bankruptcy. *See id.* at 234-35. But that situation is unlike the one here, where a creditor is attempting to apply judicial estoppel to preclude a debtor from pursuing a claim that she failed to disclose to the bankruptcy court. *See id.* at 234-38. Debtors, unlike creditors, are subject to strict disclosure requirements because a creditor has no way of knowing about a concealed asset except through a debtor's disclosure.** *See id.* at 236.

(Emphasis added).

¶47.    The Fifth Circuit itself confirmed in *Allen v. C & H Distributors L.L.C.*, 813 F.3d 566, (5th Cir. 2015), that its discussion of "revocation of acceptance" in *Oparaji* was dicta. *Id*. at 573 n.5. In any event, *Oparaji* dealt with the application of judicial estoppel against a

creditor, not a debtor. *Oparaji*, 698 F.3d at 234. The present case, like *Jackson v. Harris* and *Smith v. Reyes,* involves the application of judicial estoppel against a debtor who is subject to more "strict disclosure requirements" than is a creditor.

¶48.    Based upon the above authorities, I would find that the bankruptcy court's confirmation of Strong's Chapter 13 bankruptcy plan was not "revoked" when the court dismissed the bankruptcy proceeding, prior to discharge, due to Strong's failure to make the required payments. Accordingly, I would agree with the trial court and find that the second prong of the test was met.

(3)    *The party did not inadvertently take the inconsistent positions*.

¶49.    It was the third prong upon which this Court reversed the trial court's grant of summary judgment based upon judicial estoppel in *Strong I*. This Court found that our Mississippi Supreme Court had changed the way evidence should be assessed before the application of judicial estoppel. In *Saunders v. National Collegiate Athletic Association*, 352 So. 3d 618, 626 (¶31) (Miss. 2022), the supreme court clarified that "the application of judicial estoppel must be facts-and-circumstances based—not merely presumption based." Because *Saunders* was decided after the trial court had rule, but before our decision in *Strong I*, this Court reversed and remanded the matter to the trial court for its consideration under the new standard.

¶50.    Upon remand, the parties agreed that the existing record was sufficient for the trial court to render a decision consistent with the mandate from this Court. In its ruling, the trial court considered the "facts-and-circumstances" of this case and made the following findings:

23

In the case sub judice, the facts support a finding that Mr. Strong had knowledge of a contingent personal injury claim against Acara when he took his inconsistent position. As an initial matter, "[c]ommon sense tells us that in obvious cases, like a car wreck or slip-and-fall tort claim, knowledge of the facts giving rise to a claim may very well be sufficient for a layperson to have knowledge of a potential tort claim." *Saunders*, 352 So. 3d at 625 (¶29). The Court would consider the circumstance underlying Mr. Strong's claim herein to be one of these "obvious cases." Even absent such a common sense determination, the very fact that Mr. Strong himself entered into both a workers' compensation *and* personal injury contract with his counsel herein belies any suggestion that Mr. Strong was unaware of such a potential tort claim.

Furthermore, while Mr. Strong argues that he "was not fully aware of all the facts giving rise to his third-party claim until July 1, 2021," when he learned of Acara's identity as Shaniqua Martin's employer, he admits that he learned of Ms. Martin's identity in September 2019 and, further, was informed at the time that she had been employed by Superior Staffing Services, Inc., at the time of the May 2018 incident. Indeed, it is Ms. Martin and Superior Staffing Services, Inc., who Mr. Strong named as defendants in his original Complaint. It is clear to this Court that not only was Mr. Strong actively investigating his third-party claim throughout the pendency of his bankruptcy case, but while his bankruptcy case was still open, he learned of the identities of both of the named defendants in his original Complaint. For Mr. Strong to now assert that any failure to disclose such claim at any point during his bankruptcy case was inadvertent is wholly at odds with these facts.

Moreover, any suggestion of inadvertence in Mr. Strong's failure to disclose such third-party claim is further undermined by his conduct in the instant matter. More precisely, in response to Interrogatory No. 9 of Acara's First Set of Interrogatories, which response Mr. Strong both swore to under oath and affirmed during his June 14, 2023, deposition, when Mr. Strong was asked to, "[s]tate whether you have ever been a party to any legal proceeding other that the instant one, either before or after the subject accident, including any workers' compensation claim, EEOC claim, criminal case, or bankruptcy case[,]" Mr. Strong responded only that he had filed a workers' compensation claim against Siemens Industry. The Court finds Mr. Strong's patently false response to Acara's interrogatory, particularly in light of the specific prompt within such interrogatory referencing bankruptcy cases and Mr. Strong's answer referencing the workers' compensation claim that was initiated on the very same day as his bankruptcy petition was filed, to be demonstrative of an attempt by Mr. Strong to conceal his prior inconsistent position and manipulate

24

the judicial system for his own financial benefit.

Accordingly, the Court finds the third element of judicial estoppel to be satisfied.

¶51. We must review this finding and the application of judicial estoppel under the abuse of discretion standard set forth above in *Jones*. The court further told us in *Jones* that:

> An abuse of discretion review prevents an appellate court from taking sides. Without a firm conviction to overturn a trial judge's decision, then his or her decision stands, whether vel non this Court might find otherwise. *See Mccord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 405 (Miss. 2007).

*Jones*, 337 So. 3d at 1071 n.3. Our role is further defined in *Adams*, 208 So. 3d at 580 (¶13).

Our appellate courts

> review the circuit court's application of judicial estoppel using the abuse of discretion standard. "Our inquiry is limited to whether the trial judge abused his discretion; we may not rule on whether he was 'right' or 'wrong' in our view. And, unless the trial court based its decision on an erroneous review of law, . . . this Court is not authorized to reverse for an abuse of discretion unless we find it was 'arbitrary and clearly erroneous.' " *Detroit Marine Eng'g v. McRee*, 510 So. 2d 462, 467 (Miss. 1987) (citations omitted).

The trial court found that the third prong of the test was met and then applied judicial estoppel in granting summary judgment. I cannot say that the trial court abused its discretion by applying judicial estoppel under the facts of this case or that the trial's court decision was "arbitrary and clearly erroneous." Therefore, I would affirm the trial court's grant of summary judgment on that basis.

**WILSON, P.J., JOINS THIS OPINION.**